SPARKS, receiver, *v.* DUNBAR, and *vice versa.*

SPARKS, receiver, *v.* JAMES, and *vice versa.*

1. A mechanic and materialman who did work and furnished materials in building section-houses for a railroad company did not, under section 1979 of the Code of 1882, acquire a lien on any of the property of the railroad company, when the contract for such work and materials was not made with that company, but with another corporation — a construction company — which had contracted with the railroad company to do such work and furnish such materials, and when there was no attempt to obtain such lien by giving the railroad company, as the true owner of the property, the notice which that section required.

2. The same rule, under like circumstances, is applicable to a "contractor to build railroads," claiming a lien for labor done for or materials furnished to the railroad company.

3. It makes no difference in such cases that the construction company owned all of the stock of the railroad company, for this did not make the two corporations identical and thus render the property of the railroad company that of the construction company; and accordingly the subcontractor did not, in either case, have a lien upon the property of the railroad company as being that of the construction company, for the reason that the latter was not the true owner of such property.

Argued June 18, — Decided July 28, 1897.

Equitable petition — interventions. Before Judge Felton. Bibb superior court. November term, 1896.

Dunbar intervened in the equitable cause of McTighe & Co. et al. *v.* Macon Construction Co., Macon & Birmingham Railroad Co. et al., alleging: These two companies are indebted to him $2,740 beside interest from January 24, 1891, for material furnished and labor done by him as contractor and builder in the construction of three section-houses at and on sections 6, 7, 8 and 11 of the railroad company, under parol contract with the general manager of said two companies. His contract

has been fully performed, since which he has demanded payment of said general manager, who refuses the same; and this action is commenced within twelve months from the time the same became due. He has caused to be recorded his lien as a contractor and materialman in the counties where said buildings were constructed; has taken no personal security for said indebtedness; and prays for the enforcement of his lien against the property of defendant. He joins in the prayer of the petition for injunction, receiver, etc.; and specially prays for judgment against said defendants for said sum with interest due him, that his mechanic's lien may be enforced and the legal priority of his claim be established by decree. Attached is his account against the two companies, for material furnished and work done as per contract in construction of three houses at each of the four sections designated, being four items of $785 each, dated December 24, 1890, January 20, February 4, and March 13, 1891, with a credit of $400 cash.

This intervention, with other matters in the litigation, was referred to a special master, who reported, among other things, as follows: "The intervention of D. C. Dunbar is for $2,740 for building section-houses on the line of defendant's road. The intervention is accompanied with liens recorded under the statutes of the State, and the prayer of petitioner is for a general judgment, and specific enforcement of lien with priority over the lien of the first mortgage bondholders of the railroad company. This claim was properly proved for the amount sued for, and I recommend that intervenor have judgment against the Macon Construction Company for said sum of $2,740 principal debt. . . . I have also declined to recommend special judgment, or a decree enforcing the liens sought to be established. Intervenor seeks a judgment against the Macon Construction Company and also against the Macon & Birmingham Railroad Company. The evidence submitted on the hearing of this case shows, that the Macon Construction Company was under a written contract with the Macon & Birmingham Railroad [Co.] to build and equip said road, that the contract of intervenor was with said Macon Construction Company, and that the intervenor knew when he entered

into said contract that the Macon Construction Company was under contract to build said Macon & Birmingham railroad. . . . It appearing that intervenor was a contractor under the primary contractor, the Macon Construction Company, he must look to the parties contracted with for payment. Intervenor seeks, in the evidence supporting his intervention, to show what amount is for labor and what for material furnished. The claim of lien and declaration is for a gross sum, and no amendment was offered seeking foreclosure for material furnished alone. . . Waiving this, however, and meeting the issue made by the evidence, I am of the opinion that where two sums are blended in one lien, there can be no legal separation."

Dunbar excepted, alleging that, as matter of evidence, the master erred in not finding that he had a prior lien to the mortgage bondholders, and that his lien was for improvements on the real estate of the construction company, the owner of the real estate on which he built the houses; and that, as matter of law, the master erred in not finding that his claim was a lien upon the real estate of the construction company and the improvements thereon, for material furnished and labor done in constructing houses upon said real estate. Upon the trial of the exceptions, the court approved the exception of fact in so far as that the master failed to find that for material furnished, amounting to $1,960, the same was a special lien on the property of the railroad company; and disapproved the exception in so far as it relates to the failure to find a lien for labor done. To this ruling the railroad company and the receiver thereof and the trustee of the first mortgage bondholders excepted. They also excepted to the verdict directed and the decree rendered by the court in accordance with said ruling, that of the $2,740 for which judgment was rendered in Dunbar's favor, the sum of $1,960 be a lien upon the proceeds of the sale of the railroad in the hands of the commissioner of court, prior to that of the mortgage bondholders.

By cross-bill Dunbar assigns error upon the disallowance by the court of the remainder of the amount for which he had

judgment ($870), as a lien for labor of like priority to that of his lien for material. He further alleges error: In not approving his further exception, that the master had erred in not allowing his claim as a lien upon the property of the construction company, and in failing to find that the property held in the name of the railroad company was the property of the construction company. And the further exception, that the master had found against his contention that he was entitled to a lien as against the construction company as the original owner of the land upon which the houses were built; it appearing that he had filed his liens therefor before the railroad company had acquired said land from the construction company.

The record contains two amendments made by the intervenor and allowed at the trial in the superior court. The first of these alleges, that of the amount declared for as due him by the construction and railroad companies, $1,960 was due for material furnished in the construction of the houses, and the balance was due him as mechanic for labor in their construction; and that the contract for furnishing the material and construction of the houses was made by him with J. D. Lane, the general manager of both companies. The other alleges, that the construction company undertook to build a railroad from Macon to Birmingham, and to carry out its scheme obtained from the legislature in 1888 a special charter which is void, there being an existing general law enacted in 1887 for the granting of railroad charters; that the construction company was to obtain the right of way, furnish the material, construct and equip the railroad from Macon to Birmingham, and turn it over when completed to the railroad company, but it is not completed and has never been turned over to be operated by the railroad company, but was operated as far as completed by the construction company when placed in the hands of a receiver; that the railroad company was erected practically by the construction company, having the same general officers, and the directors of each being stockholders of the other; that the railroad company owned the stock and bonds of the railroad; that intervenor has filed liens against the construction

company in terms of the law, in the counties wherein he built the houses, and he is a direct contractor with the construction company, the owner of the property; that by reason of the unconstitutionality of its charter, the railroad had no power to create a mortgage lien or make a trust deed upon the property, and intervenor did not know or trade with said pretended corporation. He prays, that his lien be foreclosed against the property set forth therein, as a first lien thereon; that the property of the railroad company be decreed to be assets of the construction company and subject to the payment of its debts; that it be decreed that the buildings and premises claimed in the lien are still the property of the construction company (if the court should hold the charter of the railroad company to be valid) and subject to the lien of intervenor as the property of the owner contracting directly with him (he denying that he was a subcontractor) and subject to any lien created by the railroad company, which, if acquiring any title, acquired it burdened with this lien.

It appears in the James case, that on December 16, 1889, James Brothers made a contract with the Macon Construction Company, whereby the former undertook, in consideration of certain payments to be made and covenants to be performed by the latter, to construct and finish all the piling timber, drains and trestling and such other work connected therewith as might be necessary to complete the Macon & Birmingham railroad between Macon and Woodbury, in accordance with certain specifications set forth in the contract and in accordance with the directions of the engineer in charge of the work, and to complete the same by July 1, 1890, under a forfeiture of ten per cent. in case of failure so to complete by that date. They completed the work according to the contract, and filed and had recorded their lien as railroad contractors in the several counties where the work was done, upon the entire right of way, road-bed, fixtures and other enumerated property of the Macon & Birmingham Railroad Company, a corporation under the laws of Georgia, having its principal office in Bibb county and running through that and other named counties to LaGrange; such claim of lien being for work done and

material furnished, as well as labor in the construction of trestles, etc.

The properties of the railroad and construction companies having been placed in the hands of a receiver upon the petition of McTighe & Co. et al., James Brothers intervened, and their claim, with other matters in the litigation, was referred to a special master, from whose report appears the following: The claim of intervenors against the construction company is fully sustained by the evidence, as to the amount due. There is no contention about this, the contest being as to whether they are original contractors and entitled to a lien as such, or whether they are subcontractors without right of lien or priority. The pleadings and exhibits show that they dealt with the construction company as original contractors for the building of the railroad. In their original petition it is stated as a fact that they were subcontractors of the construction company in the building of the trestles, etc., on the railroad, and one of the intervenors on oath avers this to be true. By amendment this assertion of subcontractorship is denied; but the master concludes, under the pleadings and evidence, that the contract was a subcontract, and that intervenors were not original contractors with the railroad company. It appears from the evidence, that when the railroad was commenced and this contract was made, the construction company was a solvent corporation with large assets, that intervenors contracted therewith with full knowledge that it was the original contractor with the railroad company, that they were paid by the treasurer of the construction company from time to time for work done, and signed receipts to him; they do not claim to have been misled or deceived, and the evidence all indicates that they relied upon the credit of the construction company and not upon that of the railroad. The master finds, that the railroad company was a corporation having a legal charter, and that it did not occupy the position of a railroad belonging to the construction company; but whether legally incorporated or not, intervenors treated with the parties who were themselves contractors with the railroad as a corporation, and are estopped from collaterally attacking its legal existence. The

lien taken out by intervenors upon the railroad for material furnished and labor done was filed for a gross sum; by amendment they separated their accounts, and proved that the amount due them for labor was $10,942.14, and for material $5,015.08. The master recommends that they have judgment against the construction company for $15,957.22, with interest thereon from March 15, 1891; but holds that they are not entitled to any judgment against the railroad company nor any lien against its property; that their claim is one for original construction, and not for operating expenses; and that they do not occupy the relation of contractors which would entitle them to preferential liens over the claims of the first mortgage bondholders of the railroad company.

To the master's report numerous exceptions were filed by the intervenors. On the hearing all of these were overruled, except in so far as the master failed to find that intervenors were entitled to a lien for the amount of material furnished, upon the property of the railroad company, and in preference to the lien of the first mortgage bondholders. The court directed a verdict and decree accordingly. To this ruling the receiver of the railroad company, the railroad company, and the trustee of the bondholders excepted. The intervenors by cross-bill excepted to the disapproval of their other exceptions, contending that they should have been sustained, and that the court should have directed a verdict and decree in their favor for the sum found to be due them for labor, which should constitute a lien upon the railroad property superior to the lien of the mortgage bondholders.

*Gustin, Guerry & Hall* and *L. F. Garrard,* for the receiver.
*Hardeman, Davis & Turner, S. A. Reid, John L. Hardeman, W. D. Nottingham* and *Marion Erwin,* contra.

COBB, J. The official report states the facts.

1. In order for a mechanic or materialman to obtain a lien upon real estate, under the provisions of section 1979 of the Code of 1882, as it stood prior to the passage of the acts of 1893 and 1895 amending the same (Acts 1893, p. 34; Acts 1895, p. 27), it was necessary that the mechanic or materialman should either have a contract for the work done or material

furnished with the owner of the property, or a contract for such work and material with a contractor who had a contract with the owner. In the first instance, that is where the mechanic or materialman dealt directly with the owner, the lien attaches to the property improved, to the extent of the amount contracted to be paid. In the latter case, no lien attaches to the property until written notice stating the amount claimed has been served upon the true owner before he settles with such contractor, and then only to an amount not exceeding the sum which would then be due by the owner to the contractor. Therefore, where it appeared that a mechanic did work and a materialman furnished materials in building section-houses for a railroad company, and the contracts for such work and material were not made with that company, but were made with another corporation — a construction company, which had contracted with the railroad company to do such work and furnish such materials, and there was no attempt to comply with the provisions of the statute which required in such cases notice to the railroad company as the true owner of the property, no lien would arise in favor of either the mechanic or the materialman as against the property of the railroad company. In such case they would fail to obtain a lien under the first provision of the section alluded to, because they sustained no contractual relation to the railroad company, and a failure to give the notice required would prevent the lien provided in the latter part of the section from arising in their favor.

2. A "contractor to build railroads" is entitled to a lien upon the railroad built, under the same circumstances that a mechanic and materialman would be allowed such lien. Therefore, where it appeared that such contractor neither had a contract with the railroad company, nor had served any notice upon it as the true owner of the property, such contractor was not entitled to enforce a lien against the property of the company.

3. That it appeared that the true owner of the property was a corporation, and that the construction company which had the contract to build the railroad and section-houses was another corporation which owned all the stock of the railroad

company, did not make the two corporations identical, and give to the mechanic, materialman, or contractor, as the case may be, the right to treat the property of the railroad company as the property of the construction company. The two corporations were distinct persons in law, and the contractual relation with one would not be sufficient as a foundation for asserting a lien, under the provisions of the section above mentioned, against the property of the other. *Exchange Bank* v. *Macon Construction Company*, 97 *Ga.* 1.

*Judgment on main bill of exceptions reversed; on cross-bill, affirmed. All the Justices concurring.*