## CONSOLIDATED LUMBER COMPANY OF GEORGIA *v.* OCEAN STEAMSHIP COMPANY; *et vice versa.*

1. A steamship company owning certain wharf property leased the same to a railroad company for a period of five years. At the expiration of the term the lease was renewed from year to year upon the same terms, one of which was, that on the termination of the lease there should be an equitable adjustment between the parties of the value of any betterments and improvements, properly chargeable to capital account, which should have been erected or constructed on the demised premises by the railroad company with the express written consent of the steamship company. During one of the years after the original period of the lease had expired, but while the lease was in force under a renewal for a year, the railroad company constructed wharves and a shed under a contract with a contractor. The plaintiff furnished to the contractor lumber which was used in the improvement, and duly recorded its claim of lien. The steamship company after the construction of the wharves and shed by the contractor reimbursed the railroad company for the expense of such construction, though it did not consent in writing to the lessee's making the improvement. *Held,* that the materialman is not entitled to a lien on the improved property.

2. The circumstance that the railway company owned most or all of the stock in the steamship company does not affect the case, because this did not make the two corporations identical and thus render the property of the steamship company that of the railway company.

JULY 24, 1914.

Lien foreclosure. Before Judge Charlton. Chatham superior court. April 28, 1913.

*Robert L. Colding* and *Bennet, Twitty & Reese,* for plaintiff.

*Lawton & Cunningham, H. W. Johnson,* and *Osborne & Lawrence,* for defendants.

EVANS, P. J. A suit to foreclose a materialman's lien was instituted by the Consolidated Lumber Company of Georgia against John H. McKenzie's Sons & Company as contractors, and the Ocean Steamship Company of Savannah as owner of the property against which the lien was sought to be asserted. The Ocean Steamship Company filed its demurrer to the petition, which was overruled; and exceptions pendente lite were taken to this ruling. Both defendants filed answers; and upon the close of the evidence the

court directed a verdict for the plaintiff against the contractors, McKenzie's Sons & Company, and in favor of the owner of the property, the Ocean Steamship Company. The plaintiff excepts to the direction of the verdict; and the Ocean Steamship Company, by cross-bill, excepts to the overruling of its demurrer.

The facts developed at the trial were these: The Central of Georgia Railway Company, on October 15, 1910, made a contract with John H. McKenzie's Sons & Company to build certain wharves and shed at slip No. 3 on the property of the Ocean Steamship Company of Savannah. The final estimate of the work at the contract price amounted to $129,866.06. The Central of Georgia Railway Company has paid on account on the contract price $116,-678.34; of this amount $2,470.53 was paid after this suit was filed. The Consolidated Lumber Company of Georgia contracted with McKenzie's Sons & Company to furnish certain lumber to build the wharves and shed on slip No. 3; and the lumber furnished under the contract, to the extent of the value claimed in the suit, actually went into the construction of these wharves and shed. The property on which the wharves and shed are located was owned by the Ocean Steamship Company, and was leased by the Central of Georgia Railway Company. That lease is dated August 2, 1904, and was for the term of five years from July 1, 1904, "to be completed and ended on the thirtieth day of June, 1909." The lease was renewed from year to year on the same terms, and was in existence during the time of the contract involved in this case, and for some time thereafter. The remaining parts of the lease material to the questions to be decided are: "The Railway Company will pay from time to time, as they mature, all taxes, all assessments ordinary and extraordinary, premiums on fire insurance, cost of maintenance and operation, and all other expenses of every kind or nature (except as herein otherwise provided) in connection with the said leased property. The Railway Company will maintain the said leased property in good condition and repair (in all respects up to the standard of its present condition), and will, at the expiration of the lease, return it to the Steamship Company in like good condition and repair, ordinary wear and tear excepted. The Railway Company will complete, and will advance for account of the Steamship Company the money for the improvements now going on by mutual consent of the parties in the Boston Slip, and

the Steamship Company will reimburse the Railway Company for the entire cost thereof, without interest, in equal monthly installments, the first installment to be paid so soon as the cost shall be definitely ascertained, and the last installment to be paid in the month of June, 1907, with liberty to the Steamship Company to anticipate payment at any time, but without discount.  On the termination of this lease for any cause, whether by reason of the expiration of the term herein limited, or otherwise, there shall be an equitable adjustment between the parties hereto of the value of any betterments and improvements (not herein provided for), properly chargeable to Capital Account, which shall have been erected or constructed on the demised premises by the Railway Company with the expressed written consent of the Steamship Company.  Except as herein noted, no allowance shall be made by the Steamship Company to the Railway Company for betterments and improvements.  On the failure of either party to observe any of the covenants of this lease, the other party may at its option cancel and terminate the same by giving ninety days written notice of its desire to do so.  From and after the expiration of the time limited in said notice, all rights of both parties hereunder shall be determined, and this contract shall thereafter be annulled, except (1) to enable each party to collect from the other any sums which may be due up to the date of such termination, and (2) to carry out the equitable adjustment of the value of betterments and improvements hereinbefore provided for."  This lease was canceled, and a new lease was made pending the suit, at which time the Ocean Steamship Company of Savannah reimbursed the Central of Georgia Railway Company for the money expended on these improvements, and the rental was increased on a certain percentage on the improvements.  The plaintiff's claim of lien was properly recorded within the time prescribed by law.  The stock of the Ocean Steamship Company consists of 20,000 shares, and is registered on the books of the company as follows:  8 shares are held by 8 individuals, each holding one share; 42 shares are held in the name of the Railway Company, and 19,950 shares by the Central Trust Company.  The facts with reference to the 19,950 shares registered in the name of the Central Trust Company are as follows:  In 1877 the Central Railroad & Banking Company of Georgia made a deed conveying this stock to the Central Trust Company to secure a

debt. The stock was deposited with the Central Trust Company, and registered under its name. Upon the insolvency of the Central Railroad & Banking Company of Georgia on March 4, 1892, the equitable interest of that corporation in this stock, sold at public sale, was bought in by Samuel Thomas and Thomas F. Ryan, and subsequently conveyed by them to the Central of Georgia Railway Company. The deed to secure the debt to the Central Trust Company has not been foreclosed, nor was there any default on that debt during the insolvency of the Central Railroad & Banking Company of Georgia. The Central Railway Company now owns the equitable interest in that stock, subject to the deed held by the Central Trust Company. The contract between McKenzie's Sons & Company and the railway company was also put in evidence.

1. The improvements into which the plaintiff's lumber went were made pursuant to that clause of the contract between the steamship company and the railway company, that, on the termination of the lease, there shall be an equitable adjustment between the parties of the value of any betterments and improvements (not provided for in the contract), properly chargeable to capital account, which shall have been erected or constructed on the demised premises by the railway company with the expressed written consent of the steamship company. The steamship company contends that it did not consent in writing to the construction of the improvement, that it had no contractual relation with the lumber company, and that the lumber company has no lien on its property for work done at the instance of its tenant, the railway company. On the other hand, the lumber company contends, that the contract between the railway company and the steamship company contemplated the erection of permanent improvements for the betterment of the landlord's property, for the expense of which the tenant was to be reimbursed, and that the tenant was actually reimbursed; that although the improvements were made by the railway company without the written consent of the steamship company, yet the voluntary payment to the railway company by the steamship company for these improvements was a ratification of their construction, at the instance of and for the benefit of the steamship company. The statute gives to one furnishing material for the improvement of real estate upon the employment of a contractor, or some other person than the owner, a lien upon the real estate improved, for the ma-

terial used in the improvement. Civil Code (1910), § 3352. This has been construed to mean that the material so furnished must be under contract with a contractor or with some person occupying a similar relation to the owner as that of contractor. *Pittsburg Plate Glass Co.* v. *Peters Land Co.,* 123 *Ga.* 723 (51 S. E. 725). And in that case it was held that one who furnishes material for the improvement of real estate, upon the employment of a contractor whose contract for the improvement is with a lessee, and who sustains no contractual relation with the owner of the fee, is not entitled to a lien as against the owner of the premises. A tenant can not order work done °upon the demised premises and charge the owner with the cost, unless there is some relation existing between him and his landlord other than that of lessor and lessee, by virtue of which the landlord expressly or impliedly consents to the contract under which the improvements are made. The mere knowledge of the landlord that the improvements are being made by the tenant is insufficient to charge him or his premises with their cost. He must either expressly or impliedly authorize the tenant to make the improvements for the former's benefit. *Central of Georgia Railway Co.* v. *Shiver,* 125 *Ga.* 218.

The provision in the lease contract did not contemplate that the railway company was to act as agent of the steamship company in constructing any improvement. All that the steamship company covenanted was to have an equitable adjustment with the railway company, at the end of the lease, for such improvements as were made with its written consent. This does not amount to an obligation to reimburse the railway company for the money expended by the railway company. The improvements at the end of the lease may be worth much less than they cost, or they may be of a character mainly valuable to the tenant and of little value to the landlord. The lessor obligates to pay no certain sum, and the amount that may be due on an equitable adjustment may be much less than the contract price. Where a materialman is entitled to foreclose a lien on the property of a landowner on account of materials furnished to a contractor for the improvement of the real estate, the amount of his recovery can not exceed the contract price. *Stevens* v. *Georgia Land Co.,* 122 *Ga.* 317 (50 S. E. 100). Hence, as the steamship company never agreed to pay any stated amount to the railway company, it could not be ascertained, in advance of the

termination of the lease, whether the claim of the lienor is more or less than what would be due on an equitable adjustment. Under the circumstances we do not think that the plaintiff was entitled to the lien attempted to be asserted.

2. The interest of the railway company as a stockholder in the steamship company does not subject the property of the steamship company to the lien. This point was expressly ruled in *Sparks* v. *Dunbar,* 102 *Ga.* 129 (29 S. E. 295). There was no error in directing the verdict to which exception is taken.

*Judgment affirmed on main bill of exceptions. Cross-bill dismissed. All the Justices concur.*