LENNOX INDUSTRIES, INC., Appellant,

v.

CITY OF DAVENPORT, Iowa; Shir-Jim, Inc., d/b/a Northwest Plumbing & Heating Co.; Insurance Co. of North America, Appellees,

Schebler & Co. and ABC Supply Co., Defendants.

No. 66553.

Supreme Court of Iowa.

June 16, 1982.

Rehearing Denied July 15, 1982.

William M. Tank of Cartwright, Druker & Ryden, Marshalltown, and Realff H. Ottesen of Ottesen & Ottesen, Davenport, for appellant.

Edward B. de Silva and John T. Flynn of Wells, Brubaker, de Silva, Gallagher, Flynn & Darland, Davenport, for appellees Shir-Jim, Inc., and Insurance Co. of North America.

Scott Hartsook, City Atty., Davenport, for appellee City of Davenport.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Plaintiff Lennox Industries, Inc. (Lennox), brought this equity action to establish its claim under chapter 573, The Code 1979, for materials furnished ABC Supply Co. (ABC), which it alleged was a subcontractor on a public improvement project. Trial court, finding that ABC was a materialman and not a subcontractor, held Lennox could not recover. We reverse and remand.

In December 1977 the City of Davenport took bids to remodel a police station. Shir-Jim, Inc., d/b/a Northwest Plumbing & Heating Co., was the successful bidder for the mechanical work. It entered into a contract with the city to provide and install the plumbing and heating and cooling equipment for the sum of $144,500. Defendant Insurance Company of North America (INA) provided a performance bond as required by sections 573.2—.5, The Code.

The job specifications required Lennox heating and cooling units. Shir-Jim could have obtained the equipment directly from Lennox. However, in order to comply with federal regulations requiring participation by minority contractors, it ordered the Lennox equipment from ABC of Topeka, Kansas. ABC ordered the equipment from Lennox. The latter company sent it directly to Schebler & Co. in Davenport. Shir-Jim had contracted with Schebler to install this equipment. Aside from two telephone conversations, minimal correspondence, and a minor revision in the purchase order contract, ABC had little contact with Shir-Jim on the police station project. The equipment units ordered from Lennox were not "standard" and were in stock only "sometimes."

Shir-Jim paid ABC for these units in one payment of $22,875. ABC did not pay Lennox. Lennox sued ABC in Kansas, obtained a judgment for $22,814.50 with interest and costs, but collected only $300. Lennox then brought this suit against Davenport, Shir-Jim, Schebler, ABC, and INA to establish its claim against the $14,450 contract retainage held by the city, and against INA on its bond. Schebler was dismissed as a party defendant. ABC did not appear.

I. The parties agree the fighting issue in this case is whether ABC was a "subcontractor" as that word appears in section 573.7, The Code:

> Any person, firm, or corporation who has, *under a contract* with the principal contractor or *with subcontractors*, performed labor, or *furnished material* . . . in the construction of a public improvement, may file, with the officer, board, or commission authorized by law to let contracts for such improvement, an itemized, sworn, written statement of the claim for such labor, or material . . . .

(Emphasis added.) No one contends Lennox did not meet all filing requirements. Thus, if ABC was a section 573.7 "subcontractor," Lennox has a claim against the retainage, Shir-Jim and INA for payment

for its equipment, and attorney fees. *See* §§ 573.18—.22, The Code.

█ II. Lennox argues that because chapter 573 does not define "subcontractor" we should adopt the definition in subsection 572.1(2), The Code. Although section 573.1 ("Terms defined") has been amended since the broad subsection 572.1(2) definition has been in effect, the legislature has not seen fit to adopt that definition, or any other definition, for "subcontractor." While this court extensively analyzed the concepts of "subcontractor" and "materialman" in *Forsberg v. Koss Construction Co.*, 218 Iowa 818, 252 N.W. 258 (1934), it did not adopt the subsection 572.1(2) (mechanic's lien) definition of "subcontractor" for a chapter 573 (public improvement) situation. In the case before us we, too, find no legislative intent encouraging us to do indirectly what the legislature failed to do directly. We hold the subsection 572.1(2) definition of "subcontractor" is not applicable to chapter 573.

III. In our two most recent chapter 573 cases, *Dobbs v. Knudson, Inc.*, 292 N.W.2d 692, 695 (Iowa 1980), and *First Federal State Bank v. Town of Malvern*, 270 N.W.2d 818, 820 (Iowa 1978), we have looked to the federal Miller Act cases. That Act, 40 U.S.C. §§ 270a—d (1976 & Supp. IV 1980), is the federal counterpart of chapter 573. The two acts have a common purpose in protecting contributors to public work projects because normally it is impossible to obtain a lien on public property. *See F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703, 709 (1974); *Cities Service Oil Co. v. Longerbone*, 232 Iowa 850, 853, 6 N.W.2d 325, 326–27 (1942). *See generally* Calhoun, *Suretyship for the Iowa Lawyer*, 67 Iowa L.Rev. 219, 245 (1982). In neither is the word "subcontractor" statutorily defined.

We distill from the federal decisions not a technical, but a functional definition. A subcontractor is an entity that performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract. The substantiality and importance of the entity's relationship with the prime contractor is critical. The substantiality of the relationship will usually determine whether the prime contractor can protect itself, since it easily can require bond security or other protection from those few "subcontractors" with whom a substantial relationship exists. *See J. W. Bateson Co. v. United States ex rel. Board of Trustees*, 434 U.S. 586, 590, 98 S.Ct. 873, 875–76, 55 L.Ed.2d 50, 55 (1978); *Rich*, 417 U.S. 116, 123–24, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703, 710; *Clifford F. Mac-Evoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 108–10, 64 S.Ct. 890, 894–95, 88 L.Ed. 1163, 1168–69 (1944); *accord Aetna Casualty & Surety Co. v. United States ex rel. Gibson Steel Co.*, 382 F.2d 615, 617 (5th Cir. 1967); *see also Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 301, 191 N.W.2d 401, 406 (1971); *McElhose v. Universal Surety Co.*, 182 Neb. 847, 858, 158 N.W.2d 228, 235 (1968).

█ It is apparent under the language of the Miller Act and section 573.7, The Code, that ordinarily a contract with a prime contractor is a prerequisite to being a subcontractor. *Bateson*, 434 U.S. at 590, 98 S.Ct. at 876, 55 L.Ed.2d at 55. *But cf. Peters v. Hartford Accident & Indemnity Co.*, 377 Mass. 863, 870, 389 N.E.2d 63, 67 (1979) (contract with prime contractor not required). Those unpaid sub-subcontractors furnishing labor or materials under contract with the subcontractor are potential claimants if they furnish statutory notice to the prime contractor. *See* 40 U.S.C. § 270b(a) (written notice within 90 days); § 573.15, The Code (30-day notice).

█ Although the issue is close, we hold ABC was a subcontractor within the meaning and intent of section 573.7, The Code. It had a contract with the prime mechanical contractor to furnish cooling and heating units that were an integral part of the project plans and specifications. The cost of these units comprised about fifteen percent of Shir-Jim's total compensation under its contract with Davenport. Applying the above functional test, ABC therefore undertook to furnish a specific part of the materi-

als required under the original contract. Contrary to inferences in Shir-Jim's brief, ABC, under the functional test we adopt, was not required to furnish labor or install the material in order to be a section 573.7 "subcontractor." "Material," as defined in subsection 573.1(4), may even include gasoline and fuel, items not ordinarily requiring labor or installation.

Nor is Lennox prohibited from recovering because it did not install the units it manufactured. Other requirements being met, section 573.7 permits recovery by a sub-subcontractor furnishing "labor, *or* material" to a subcontractor.

IV. A number of this court's decisions relied on by Shir-Jim are from an era when the predecessors of chapter 573 were strictly construed. *See, e.g., Melcher Lumber Co. v. Robertson Co.*, 217 Iowa 31, 32, 250 N.W. 594, 594 (1933) ("We have at all times adopted the policy of strict construction of this statute in its successive forms."). We now "construe the statute liberally with a view to promoting its objects and assisting the parties in obtaining justice." *Dobbs*, 292 N.W.2d at 694; *see Gollehon, Schemmer & Associates, Inc. v. Fairway-Bettendorf Associates*, 268 N.W.2d 200, 201 (Iowa 1978) (construction of § 572.2, The Code); § 4.2, The Code. So construed, we find section 573.7 is broad enough to include ABC as a subcontractor. Under the facts in this record, Lennox therefore is entitled to recover.

We have examined the other arguments advanced by the defendants but do not find them controlling.

We reverse and remand for further proceedings in conformance with this opinion.

REVERSED AND REMANDED.