**ECONOMY FORMS CORPORATION,**
**Appellee, Cross-appellant,**

**v.**

**CITY OF CEDAR RAPIDS, City of Cedar Rapids City Council, and Cedar Hills Construction Company, Defendants,**

**W.R. Hennessey and Son, Inc., and Hartford Accident and Indemnity Company, Appellants, Cross-appellees.**

**No. 69068.**

Supreme Court of Iowa.

Nov. 23, 1983.

Rehearing Denied Dec. 21, 1983.

Donald C. Hoskins, Marion, for appellants, cross-appellees.

Gene R. LaSuer of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee, cross-appellant.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

McCORMICK, Justice.

Plaintiff Economy Forms Corporation leased concrete forms to a subcontractor on a public improvement who defaulted in rental payments. Plaintiff subsequently claimed the rentals from the general contract retainage held by the public body pursuant to Iowa Code chapter 573. After trial of the claim in equity, the trial court entered judgment for the rentals for plaintiff against the subcontractor, general contractor and general contractor's bonding company. Upon this appeal by the general contractor and the bonding company, we affirm the trial court. We also affirm on plaintiff's cross-appeal from the failure of the trial court to award attorney fees.

The issues are whether chapter 573 denied the general contractor due process and equal protection, whether the claim was properly filed, whether the court erred in determining the amount of plaintiff's recovery, and whether plaintiff should have been awarded attorney fees. Before addressing these issues, we state the facts as we find them in our de novo review.

Defendant William R. Hennessey & Son, Inc. (Hennessey) entered a contract with the City of Cedar Rapids to install storm sewers for the city. In turn, Hennessey subcontracted with defendant Cedar Hills Construction Company (Cedar Hills) for cement work on the project. Cedar Hills leased concrete forms from plaintiff to use in doing its work. Hennessey received progress payments from the City and made periodic payments to Cedar Hills. Employees of Cedar Hills were carried on Hennessey's payroll and were paid directly by Hennessey on a regular basis.

Cedar Hills fell behind in its rental payments to plaintiff, and plaintiff repeatedly requested that the account be paid. On August 6, 1979, plaintiff sent a letter to Hennessey and Cedar Hills requesting payment. Subsequently plaintiff furnished Hennessey with copies of all invoices for leased material. Hennessey made a progress payment to Cedar Hills of $20,000 on August 28, 1979, and only $12,000 of that amount was paid to plaintiff. As of March 3, 1980, Cedar Hills owed plaintiff $49,-067.47 in unpaid rentals.

On March 29, 1980, plaintiff mailed a claim against Cedar Hills and Hennessey for $49,067.40 to the city engineer. In June 1980 plaintiff furnished the City an affidavit supporting its claim and reciting that Hennessey was given copies of plaintiff's invoices by Cedar Hills while construction was still in progress.

On July 16, 1980, the city council passed a resolution accepting Hennessey's work on the project and making payment to Hennessey of the contract retainage less $98,134.80, twice the amount of the plaintiff's claim, which the resolution recited was to be held until disposition of the claim. Hennessey later filed a bond with defendant Hartford Accident and Indemnity Company as surety to obtain release of the retainage. This is the basis for the bonding company's involvement in the case. In September 1980 plaintiff filed the present action and eventually recovered the judgment from which this appeal was taken.

I. *Constitutionality of chapter 573.* Hennessey attacks chapter 573 on due process and equal protection grounds under the fourteenth amendment of the United States Constitution and Article I, sections 1 and 6 of the Constitution of Iowa. The due process attack is premised on the contention that by requiring the City to withhold funds due the contractor "without notice or hearing" the statute denies procedural due process to the contractor. *See* Iowa Code §§ 573.12–573.14 (1979). The equal protection attack is based in part on the double withholding requirement when claims are filed. *See* § 573.14. It is also based on the differential treatment given general contractors on public improvements and con-

tractors on private work. *See* Iowa Code ch. 572.

■ Hennessey's due process attack on the contract payment retainage is palpably without merit. This situation is unlike the problem addressed in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and its progeny. Here there is no seizure of another's property. Instead the legislature has simply mandated, in advance, how payments are to be made under contracts for the construction of public improvements. At the time material here, section 573.12 provided:

Payments made under contracts for the construction of public improvements, unless provided otherwise by law, shall be made on the basis of monthly estimates of labor performed and material delivered. In making said payments, there shall be retained ten percent of each said monthly estimate by the public corporation; provided, however, that if the contract is for more than fifty thousand dollars, and if the public corporation at any time after fifty percent of the improvement has been completed finds that satisfactory progress is being made, the public corporation may authorize any of such remaining payments to be made in full.

Section 573.14 requires retention from final payment to the contractor of "a sum not less than double the total amount of all claims on file." These provisions became part of Hennessey's contract obligation. No additional notice and opportunity for hearing were required. *Cf. Keith Young & Sons Construction Co. v. Victor Senior Citizens Housing, Inc.,* 262 N.W.2d 554 (Iowa 1978) (upholding mechanic's lien provisions of chapter 572 when attacked on due process grounds).

■ Hennessey also argues generally the alleged unreasonableness of the burdens imposed on a prime contractor by chapter 573. We find this argument does not rise to constitutional dimensions. Rather it concerns the policy and wisdom of the enactment. Those considerations are a matter of legislative prerogative.

■ The issue of discriminatory burdens also underlies Hennessey's equal protection argument. Because no fundamental rights are involved, traditional equal protection analysis applies. *See Lunday v. Vogelmann,* 213 N.W.2d 904, 907 (Iowa 1973).

■ Hennessey asserts the requirement of withholding of double the amount of claims is discriminatory because it singles out prime contractors on public improvements for unnecessarily large security requirements. The General Assembly obviously exercised its judgment concerning the amount necessary to secure a claimant on public projects. Because costs, interest, and attorney fees may increase the allowable amount, we cannot say as a matter of constitutional law that the withholding is larger than necessary to secure payment of claims.

■ In providing for different treatment of contractors with public bodies than is provided private contractors in chapter 572, the legislature cannot be said to have acted without a rational basis. A statutory scheme which would secure those dealing with contractors by providing for mechanic's liens would obviously be ill-suited to public improvements. Normally it is impossible to obtain a lien on public property. *Lennox Industries, Inc. v. City of Davenport,* 320 N.W.2d 575, 577 (Iowa 1982). Moreover, the General Assembly could reasonably believe that the public should not be exposed to liability for risks that are subject to the control of private contractors. It merely provided by statute what private owners may provide by contract. *See, e.g., United States Fidelity & Guaranty Co. v. First State Bank of Salina,* 208 Kan. 738, 739–40, 494 P.2d 1149, 1150 (1972); *National Union Fire Insurance Co. of Pittsburgh v. Denver Brick & Pipe Co.,* 162 Colo. 519, 528–31, 427 P.2d 861, 866–67 (1967). We hold that chapter 573 does not deny general contractors equal protection on the basis alleged.

Throughout its constitutional argument Hennessey complains that the retainage provisions duplicate the security provided by bonding requirements of the statute.

*See* §§ 573.2–573.5. This complaint overlooks the provision in section 573.6(1) making the performance bond applicable only to claims not satisfied from the retainages.

■■■ II. *Filing of the claim.* Hennessey asserts plaintiff's claim was defective because it was filed with the city engineer rather than the city council, was not properly supported, and was defective in form. We are obliged to construe the statute liberally with a view to promoting its objects and assisting the parties in obtaining justice. *Dobbs v. Knudson, Inc.,* 292 N.W.2d 692, 694 (Iowa 1980). To that end we find that a claimant must substantially comply with statutory provisions governing filing of claims.

■■■ Section 573.7 provides that claims must be filed "with the officer, board, or commission authorized by law to let contracts for such improvement." In the present case the claim was initially filed with the city engineer. Pursuant to section 573.7 it was required to be filed with the city council. Yet it is clear from the record that the engineer forwarded the claim for filing with the council. The council acknowledged the claim in its July 16, 1980, resolution accepting Hennessey's work and ordering the retainage to secure the claim. We find substantial compliance with the filing requirement was shown.

This case is distinguishable from older cases where claims were filed in the wrong place and were not shown to have been received in timely manner in the right place. *See, e.g., Missouri Gravel Co. v. Federal Surety Co.,* 212 Iowa 1322, 1323–24, 237 N.W. 635, 636–37 (1931); *Southern Surety Co. v. Jenner Bros.,* 212 Iowa 1027, 1033–34, 237 N.W. 500, 503–04 (1931).

■■■ Section 573.15 requires that a claim like that in this case be "supported by a certified statement that the general contractor had been notified within thirty days after the materials [were] furnished or by itemized invoices rendered to the contractor during the progress of the work, of the amount, kind, and value of the material furnished for use upon the said public im-

provement." The certification in this case was by an affidavit furnished to the City subsequent to the initial filing of the claim but still within the statutory period for filing claims. Hennessey argues the statute requires the furnishing of invoices within 30 days of the service covered by the invoice, but the statute plainly provides for the invoices to be rendered to the contractor "during the progress of the work," not limited by the 30 day provision. It was not fatal to plaintiff's claim that the certification was filed separately and that it did not aver the furnishing of invoice copies within 30 days of the services.

■■■ Hennessey relies on several alleged formal defects in the claim. They include assertions Hennessey was misnamed as "Hennessey Bros.," the project was identified as "Kenwood Ditch Culvert Section I–C" instead of "Kenwood Storm Drainage Facility Project Section I–C and I–D," the claim contained a false statement, and the claim was not properly certified. Neither singularly nor together are these alleged deficiencies fatal to the claim. Either the deficiencies did not exist or were not of sufficient materiality to negate the showing of substantial compliance with statutory requirements.

We find no merit in Hennessey's attack on plaintiff's compliance with statutory requirements for making its claim.

■■■ III. *Amount of the judgment.* Judgment was entered for plaintiff for the admitted amount of unpaid rentals. Hennessey contends, nevertheless, that certain "equitable considerations" demonstrate that judgment should have been entered for a lesser amount. This argument is based largely on dissatisfaction with the statutory allocation of risk to a general contractor, the absence of statutory protections for the contractor, the asserted inability of Hennessey to protect itself in the circumstances of this case, the relationship of the rental rate to value of the rented materials, and the refusal of plaintiff to settle the claim by letting Hennessey purchase the forms at a price representing their fair market value.

These considerations do not affect plaintiff's legal rights even in a trial in equity. They do not constitute "unclean hands," and they do not excuse Hennessey's failure to protect itself from the present eventuality in its contract with Cedar Hills by requiring either bond security or other assurances that Cedar Hills would meet its obligations to those who would furnish it with labor or materials. *See Lennox Industries Inc.*, 320 N.W.2d at 577.

We uphold the amount of the judgment.

IV. *Attorney fees.* Plaintiff contends in its cross-appeal that the trial court erred in failing to award it attorney fees along with judgment for the unpaid rentals. It is true that section 573.21 authorizes an award of attorney fees to a successful claimant. "The court may tax, as costs, a reasonable attorney fee in favor of any claimant for labor or materials who has, in whole or in part, established his claim." An award of attorney fees is thus discretionary with the trial court. *Sheer Construction, Inc. v. W. Hodgman and Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982).

In the record we find a request by plaintiff in its petition for costs and "any other relief the Court may deem appropriate" but no specific request for attorney fees at any stage of the proceeding. The subject is not addressed in the trial court's judgment, and no motion for enlargement was filed under Iowa Rule of Civil Procedure 179(b). We thus have no basis for imputing error to the trial court. *See Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 195–96 (Iowa 1980).

We find no merit in either the appeal or cross-appeal.

AFFIRMED ON BOTH APPEALS.