A90A1056, A90A1057. F. S. ASSOCIATES, LTD.
v. McMICHAEL'S CONSTRUCTION COMPANY, INC.;
and vice versa.
(399 SE2d 479)

POPE, Judge.

This case involves a contractor's attempt to enforce a materialman's lien against an owner/developer for improvements made on behalf of the owner's tenant. The contractor, McMichael's Construction Company, Inc. ("McMichael's"), brought an action against the owner, F. S. Associates, Ltd. ("F.S.A." or "landlord"), to enforce a materialman's lien against property which was developed as a shopping center known as Hunting Creek Plaza. Both parties filed motions for summary judgment as to the enforceability of the lien. F.S.A. also requested partial summary judgment on its counterclaim for slander of title. F.S.A. appeals from the grant of summary judgment on the lien and denial of summary judgment on its counterclaim, and McMichael's cross-appeals from the denial of its request for prejudgment interest on its lien claim.

*Case No. A90A1056*

1. The evidence shows Jerry Willard, a restaurateur, and F.S.A. entered into a lease under which Willard was to operate a restaurant in the second largest space in the shopping center. The lease was to commence 120 days after the landlord notified tenant that the premises were all ready for commencement of the tenant's finish work or the date the tenant opened the premises for business, whichever occurred first. Therefore, contrary to the finding in the lower court's order, the lease was not contingent upon the tenant's making improvements to the premises. The landlord granted the tenant an allowance of $59,400 toward the costs of improvements to be made by the tenant to the otherwise unfinished space. However, any costs in excess of this amount were incurred at the tenant's sole discretion. The tenant was required to submit plans for improvements to the landlord for its approval. However, the testimony showed the purpose

of this requirement was to assure the tenant's finishes were compatible with the overall image of the shopping center.

Construction costs on the contract between the tenant and his contractor amounted to over $200,000. The landlord paid the tenant the $59,400 construction allowance specified in the lease and the tenant passed that payment on to the contractor. However, the contractor was never paid a balance due of $129,109. This is the amount claimed in the plaintiff/contractor's complaint against the owner.

OCGA § 44-14-361 permits contractors to have a special lien on real estate for which they furnish labor, service or material "if they are furnished at the instance of the owner . . . or some person acting for the owner. . . ." Id. at (b). The central issue in this case is whether, or more accurately, to what extent, the tenant was the agent of the landlord in contracting for the construction work performed by plaintiff. Here, it can be said that the landlord approved the construction contract only to the extent of the $59,400 allowance for improvements it granted to the tenant. For purposes of enforcing the lien, the tenant became the agent of the landlord for up to $59,400 in contract costs. However, although the landlord consented to improvements made in excess of the allowance, it cannot be said that the landlord became a party to the contract for any improvements exceeding that amount. It is common for a landlord to permit or consent to improvements made by a tenant, but mere consent to improvements does not mean the landlord approves the contract between the tenant and the contractor in such a manner as to make the property subject to the contractor's lien. See *Nunley Contracting Co. v. Four Taylors*, 192 Ga. App. 253 (384 SE2d 216) (1989). "Mere knowledge by the lessor of the improvements does not give rise to the lien." *Accurate Constr. Co. v. Dobbs Houses*, 154 Ga. App. 605 (269 SE2d 494) (1980). Neither does the fact that the improvements became the landlord's property upon termination of the tenant's lease create a basis for imposing a lien against the landlord. The landlord's equitable interest in improvements is not subject to a lien. *MCC Powers v. Ford Motor Co.*, 184 Ga. App. 487, 488 (3) (361 SE2d 716) (1987). " 'Under Georgia law, a materialman or subcontractor may not recover against an owner or general contractor with whom it has no contractual relationship, based on the theory of unjust enrichment or implied contract; rather, it is limited to the statutory remedies provided by Georgia's lien statute (OCGA § 44-14-360 et seq.). (Cits.)' *PPG Indus. v. Hayes Constr. Co.*, 162 Ga. App. 151 (1) (290 SE2d 347) (1982)." Id. at 488.

In *Bennett Iron Works v. Underground Atlanta*, 130 Ga. App. 653 (204 SE2d 331) (1974), this court held the contractor's lien was enforceable against the landlord because the amount sought under the lien was within the terms of the contract between the landlord and the tenant for rent concessions or payments to cover the costs of

improvements at issue in the lien. The same facts existed in *Columbus Square Shopping Center Co. v. B & H Steel Co.*, 150 Ga. App. 774 (258 SE2d 600) (1979), relied upon in the dissenting opinion below. In the case now before us, the amount sought under the lien is more than double the amount of the allowance agreed upon and *actually paid* by the landlord for tenant finishes. Thus, it cannot be said that these additional improvements were, in the language of the materialman's lien statute, "furnished at the instance of the owner . . . or some person acting for the owner. . . ."

It is common practice in the real estate business for a landlord to give a tenant an allowance to finish or redesign leased space. What the tenant chooses to spend in addition to the allowance is beyond the discretion or legal responsibility of the landlord. An owner may be liable to a contractor of the owner's lessee only in the amount that the owner contracted with the lessee to be liable. See *Consolidated Lumber Co. of Ga. v. Ocean Steamship Co.*, 142 Ga. 186 (1) (82 SE 532) (1914). Cf. *Stevens v. Ga. Land Co.*, 122 Ga. 317 (50 SE 100) (1905) (which held that a supplier to a contractor may not enforce a lien against the owner of property for materials supplied to the contractor in an amount exceeding the contract price agreed upon between the owner and the contractor). To hold otherwise would subject the owner to unlimited liability for its tenant's debts. In concluding otherwise, the lower court relied solely on cases from other jurisdictions which, unlike Georgia, have construed their respective materialman's lien laws liberally to protect the interest of the materialman. See *Dybvig v. Willis*, 59 Ida. 160 (82 P2d 95) (1938); *Lennox Indus. v. City of Davenport*, 320 NW2d 575 (Iowa 1982); *Newport v. Hedges*, 358 SW2d 441 (Mo. App. 1962); *John P. Kane Co. v. Kinney*, 174 NY 69 (66 NE 619) (1903). By contrast, the Supreme Court of Georgia has held that Georgia's materialman's lien law, being in derogation of common law, "should be dealt with according to the strictest rules of strict construction." *Green v. Farrar Lumber Co.*, 119 Ga. 30, 33 (46 SE 62) (1903).

The undisputed evidence in this case shows the landlord promptly paid the tenant the $59,400 construction allowance agreed upon between them and the tenant passed that payment on to the contractor. Thus, the landlord is relieved by accord and satisfaction of its contractual obligation to the plaintiff contractor and the trial court erred in granting summary judgment to plaintiff on the lien and denying defendant's motion for summary judgment in regard to the lien.

2. Even though the owner is entitled to summary judgment on the claim of lien, the trial court did not err in granting summary judgment to the contractor on the owner's counterclaim for slander of title. Clearly the filing of a notice of lien is an encumbrance upon title.

However, to prevail on a claim for slander of title the act or words in question must be false and malicious. OCGA § 51-9-11. The notice of lien filed in this case contained no false statements. The notice correctly recited that the lien was claimed for furnishing materials to the owner's tenant for the improvements of real estate belonging to the owner. Henceforth, the filing of a notice of lien against property for materials furnished to the owner's tenant, in an amount exceeding that which the owner agreed to be liable, may be actionable. However, whether a materialman's lien could be enforced against an owner under these circumstances is an issue never before directly addressed by the appellate courts of this State. In order to preserve the contractor's alleged right to collect on a lien against the property, the contractor was required to file the notice of lien in a timely fashion. See OCGA § 44-14-361.1 (a) (2). Thus, even though we hereby rule that the contractor was not entitled to enforce the lien under these circumstances, at the time it filed the notice of lien, the contractor was entitled to the privilege against liability for slander, provided by OCGA § 51-5-7 (3), for statements made in good faith to protect the speaker's interest.

### Case No. A90A1057

Because we ruled in the preceding case that the owner was entitled to summary judgment on the contractor's claim of lien, it follows that the trial court did not err in denying the contractor's claim for prejudgment interest on the claim of lien.

*Judgment reversed in part and affirmed in part in Case No. A90A1056. Judgment affirmed in Case No. A90A1057. Carley, C. J., Banke, P. J., Birdsong, Sognier, Beasley and Cooper, JJ., concur. Deen, P. J., and McMurray, P. J., dissent.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent. A few weeks after Willard had agreed to construct and lease the restaurant, he obtained financing, and F.S.A. notified him that his 120-day construction period had begun. Prior to this time, Willard had begun negotiation with McMichael's to construct the restaurant. Willard's architect prepared plans and forwarded them to McMichael's. They were reviewed, and construction costs were estimated at $230,000. Shortly thereafter, Willard met with F.S.A. to review the restaurant plans, and it approved them. The agreement between F.S.A. and Willard provided that a construction allowance be paid to Willard, and that the restaurant and all its fixtures and improvements belonged to F.S.A. Shortly before construction was completed, an F.S.A. representative inspected the premises and found the improvements to be a "tremendous asset to the land-

lord." After Willard filed Chapter 7 bankruptcy, F.S.A. took possession of the premises and leased them to another tenant at a higher rental rate.

### Case No. A90A1056

1. OCGA § 44-14-361 (a) (2) permits contractors to have a special lien on real estate for which they furnish labor, services, or materials if (b) "they are furnished at the instance of the owner, contractor, or some person acting for the owner or contractor." Materialman's liens "are creatures of statute and must be strictly construed as they relate to classes of persons who may claim a lien and the improvements and kind of property on which it may be obtained. Other than these, the weight of authority holds that the courts should give the statutes a fair and equitable construction. [Cit.]" *Atlanta Jewish Comm. Center v. Tom Barrow Co.*, 130 Ga. App. 608, 609 (203 SE2d 921) (1974). In determining whether McMichael's was within the class of persons who may claim a lien, we note that OCGA § 44-14-361 clearly envisions that an agent of the owner of the property can authorize the use of labor, services, or materials, which could subject the owner's property to a lien if the contractor is not paid. The sole question is therefore whether Willard was the agent of F.S.A. in contracting for the construction of a restaurant, which F.S.A. required to be built to its specifications within 120 days of signing the rental agreement.

In *Columbus Square Shopping Center Co. v. B & H Steel Co.*, 150 Ga. App. 774, 777 (258 SE2d 600) (1979), the leases, which were to take effect 60 days after delivery of the premises to the tenant, provided for a construction allowance to the tenant by reducing the rent by a fixed amount for 12 months. The tenant, in turn, contracted with B & H Steel for goods, materials, and labor, which were used to improve the property owned by the shopping center. After the tenant failed to pay the contractor, it filed a lien against the property owned by the shopping center company. This court, in affirming the jury verdict, noted that a tenant cannot order work done on the landlord's property and charge the owner for the work unless there is a relationship between himself and the landlord other than lessor and lessee whereby the landlord expressly or impliedly consents to the contract under which the improvements are made. "There need be no contract between the materialman and the true owner, but there must be a contract between the true owner and some person for erection of the improvements." Id. at 777. As in the *Columbus Square* case, the record shows that there was a contract between the tenant and the landlord signed prior to the effective date of the lease, which required the tenant to make improvements to the landlord's property, and a stated allowance was to be given to the tenant for construction purposes. At

the end of the lease, all the improvements and fixtures on the property were to become the property of the landlord. There was also a contract between the tenant and the contractor, which was approved by the landlord as to cost and design. After the restaurant was constructed, the landlord's representative who inspected the premises felt that it would provide the landlord with a substantial benefit. Accordingly, I believe that the trial court did not err in finding that the tenant acted as the landlord's agent in contracting for the improvements, and the lien was valid.

2. I would also agree with the trial court that there was no issue of fact as to the amount of the lien. The balance owed to McMichael's under the construction contract ($129,109), and not the partial construction allowance ($59,400) under the lease, determines the amount of the lien. Under OCGA § 44-6-2, Willard's interest merged with F.S.A.'s fee interest when Willard abandoned the leasehold, and the amount sought by McMichael's was less than the contract amount. See *Bennett Iron Works v. Underground Atlanta*, 130 Ga. App. 653 (204 SE2d 331) (1974).

### Case No. A90A1057

McMichael's cross-appeals and argues that the trial court erred as a matter of law in omitting prejudgment interest on its liquidated lien claim. It claims that while the lien law does not specifically allow prejudgment interest, this law is to be liberally construed in favor of contractors, and that such interest was tacitly approved in *Columbus Square Shopping Center Co.*, supra.

I further believe that the trial court erred in omitting prejudgment interest on McMichael's lien, although Georgia's lien law does not specifically allow prejudgment interest. In reviewing *Columbus Square Shopping Center Co.*, supra, the issue of prejudgment interest was not addressed by the court. In the instant case the amount of damages was liquidated as there was no issue of fact as to the amount of the lien. A liquidated debt is for an amount certain and fixed. *International Indem. Co. v. Terrell*, 178 Ga. App. 570 (344 SE2d 239) (1986). OCGA § 7-4-15 permits the recovery of prejudgment interest on "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, [and this amount] bear[s] interest from the time the party shall become liable and bound to pay them." Accordingly, F.S.A. was bound to pay the contractor at the time the lien attached. The trial court therefore erred in not awarding prejudgment interest to McMichael's.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED SEPTEMBER 10, 1990 —
REHEARING DENIED NOVEMBER 26, 1990 — 

*Chamberlain, Hrdlicka, White, Johnson & Williams, George L. Murphy, Jr.*, for appellant.
*Kilpatrick & Cody, H. Quigg Fletcher III*, for appellee.