## MASSACHUSETTS BONDING & INSURANCE COMPANY *v.* REALTY TRUST COMPANY; *et vice versa.*

1. Where an exception to an auditor's report involves a consideration of the evidence introduced before the auditor, and the evidence is not brought up, and there are in the pleadings no admissions sufficient to dispense with the evidence, the question sought to be brought under review by the exception can not be determined.

2. The provision of the Civil Code, § 3352, that, under conditions therein specified, persons furnishing material to a contractor for the improvement of real estate shall, as against the true owner, have a lien upon the property on which the materials were used, unless the true owner produces a sworn statement of the contractor that the agreed price or reasonable value of the material has been paid, contemplates the production of only one sworn statement by the contractor after completion of the work and before final settlement. Where the owner disregards the provisions of the statute and contracts to pay for the improvement in installments, pending the construction, he does so at his peril; and the fact that he may take sworn statements, after each payment is made, that the money has been applied to various expenses of the contractor in constructing the building, will not protect him from liens on account of material furnished which was not paid for.

3. Payments by the owner, which are not applied to the payment of claims for labor upon the employment of the contractor, or for material furnished to him in constructing the building, will not affect the liens of subcontractors who have furnished material.

4. A contract between materialmen and a contractor, to the effect that the former will not allow any mechanic's lien for materials furnished, but will satisfy as they mature each and every claim incurred by the materialmen in furnishing the material and labor, holding such contractor harmless against all demands and liens asserted by any person furnishing materials at their instance, and that in the event suits are filed because of materials furnished in connection with the construction of the building the materialmen will satisfy the same, and that the amounts due them for material shall not be paid until the contractor shall have received his money from the owner, is not a waiver of their lien under the statute.

(a) It does not appear that the contract above mentioned was known to the owner of the premises, or that it acted to its injury in reliance thereon, so as to raise any question of estoppel.

5. It is necessary to the foreclosure of the lien for materials furnished upon the employment of a contractor that the materialman should previously have judgment against the contractor, or sue him concurrently in the suit to foreclose his lien. Where, however, the owner of the premises, before the time for foreclosing the lien has expired, brings an equitable suit against the contractor and various materialmen who have recorded their liens in terms of the statute, praying that they be enjoined from foreclosing their liens in an independent action, and that all the rights of the respective parties be settled in the action brought by the owner; and where the materialmen are thereupon enjoined from proceeding with their foreclosure suits, and they file an answer claiming that their liens be asserted in that suit, the plaintiff can not defeat the foreclosure of such liens on the ground of failure to procure such service on the non-resident contractor as would authorize a judgment in personam. A surety on a building bond of the contractor, who is also a party to this proceeding, will be bound by the judgment.

6. The mere fact that the building was incomplete at the time of filing the suit just referred to is no reason why the materialman's lien could not be foreclosed in that suit,

7. The obligation of the surety's bond was sufficiently broad to guarantee the construction of the building according to its contract, and would render the surety company liable for any amount which the owner of the building was required to pay to materialmen on their liens for material furnished in the construction of the building.

8-10. Other matters pleaded in discharge of the surety, and referred to in the 8th, 9th, and 10th divisions of this opinion, were insufficient to release the surety from its contract.

11. Under the facts of this case, there was no error in the award of auditor's fee.

SEPTEMBER 29, 1914.    REHEARING DENIED OCTOBER 3, 1914.

Equitable petition. Before Judge Ellis. Fulton superior court. July 5, 1913.

The Realty Trust Company contracted with H. L. Stevens to build a theater and office building. The contractor gave a bond, with the Massachusetts Bonding and Insurance Company as his surety, conditioned for the faithful performance of his contract. Before the building was completed the Realty Trust Company brought its equitable petition against Stevens, the surety on his bond, and various lien claimants, alleging that Stevens had not completed the building and had abandoned the work, and that it would take large sums of money to complete it; and that various parties named as defendants were claiming liens against the property. It was prayed that these claimants of liens be restrained from prosecuting their claims at law, and be required to intervene and set up any action they might have against the Realty Company or its property. The claimants of lien filed a cross-petition, alleging that Stevens had properly performed his contract, and that they had furnished him with labor and materials which were used in the construction of the building, for which they had duly filed their claims of lien; and they prayed for judgment against Stevens and for the foreclosure of their liens against the Realty Company's property, and further asked for an injunction and other equitable relief. The court granted the injunction as prayed, and provided for its dissolution by the Realty Company giving bond, which was done. At the appearance term the surety on Stevens' bond filed a demurrer general and special, which was overruled, and this judgment was affirmed here. See *Massachusetts Bonding Co.* v. *Realty Co.*, 137 *Ga.* 693 (73 S. E. 1053), where the petition is stated more in detail. While the case was pending in the Supreme Court on the exceptions to the overruling of demurrers of

the surety, the trial court, by consent of the Realty Company, appointed an auditor with authority to pass upon all issues of law and fact involved in the case. The case was tried before the auditor, who filed his report. To this report exceptions of law were filed by the Realty Company and by the surety. The exceptions were overruled, and those filed by the surety were dismissed; and final judgment was rendered. Exceptions were taken to this court; and the decree was reversed, with direction that the order overruling the exceptions of the Realty Company be set aside, and that the case be again heard upon the exceptions of both that company and the surety. 139 *Ga.* 180 (77 S. E. 86). Upon the return of the remittitur the court overruled all exceptions of law, disapproved the exceptions of fact, and approved the findings of the auditor. Certain issues arising directly between the Realty Company and the surety were heard upon an agreed statement of facts; and upon these the court directed a verdict in favor of the Realty Company. The auditor's report was made the judgment of the court, final decree was rendered in favor of the various claimants of liens, and judgment was rendered in favor of the Realty Company against the surety. The surety sued out a bill of exceptions, assigning error upon the overruling of its exceptions to the auditor's report, on the direction of the verdict, and on the decree. The Realty Company, by cross-bill, assigned error upon the overruling of its exceptions to the auditor's report, and on the final judgment.

*Dodd & Dodd* and *Little, Powell, Hooper & Goldstein,* for plaintiff in error in the main bill of exceptions.

*Wimbish & Ellis, Leonard Haas, Moore & Pomeroy, V. B. Moore, J. S. Slicer, Payne & Jones, C. W. Smith, M. A. Hale, Smith, Hammond & Smith, J. A. Boykin, G. C. Middlebrooks,* and *E. A. Neely,* contra.

ATKINSON, J. (After stating the foregoing facts.)

1. It was contended that the finding of the auditor, that the subcontractors were entitled to liens for the several amounts reported by him, was erroneous for a number of reasons: among them, because the material furnished by the subcontractors was furnished after March 1, 1910, and that up to that time all material purchased or used by the contractor in the construction of the building had been paid for. Several arguments were presented in support of this contention, but the evidence introduced before the

auditor does not appear in the record before the Supreme Court, and there is nothing to show the dates upon which the materials were furnished, which constituted the basis for the several liens which were sought to be set up. In the absence of evidence introduced before the auditor, or admissions in the pleadings on the subject, we can not say that, for the reason mentioned, the auditor erred in his finding.

2. Another contention was because, inasmuch as the owner, the Realty Trust Company, procured an affidavit from the contractor upon the payment of each installment, there was a compliance with the statute, which defeats liens of materialmen by the owner's taking a specified affidavit. The statute mentioned is embodied in the Civil Code, § 3352, and provides that when work is done or material furnished on the employment of a contractor, a lien shall attach upon the real estate improved as against the true owner for the amount of work done and material furnished, unless such true owner shows that such lien has been waived in writing, or produces the sworn statement of the contractor, or other person at whose instance the work was done or material furnished, that the agreed price or reasonable value thereof has been paid. The manifest purpose of this statute is to make the property of the owner liable for material which entered into the construction of the improvement on the employment of a contractor, within the limits of the contract price, unless the materialman waives his lien, or unless, upon the final completion of the work, the true owner, before payment of the contract price, takes from his contractor a sworn statement that all work done or material furnished has been paid for at the agreed price or reasonable value. Only one affidavit by a contractor is contemplated by the statute. To say that a contractor can destroy or perfect a lien, which the statute was designed to establish, by the mere making of a sworn statement, or by the omission to make one, states a very broad power; one that could be exercised without the concurrence or knowledge of the person claiming a lien. The statute contemplated a provision for affording the owner a truthful representation upon which he might act in making final settlement with his contractor, but it was not designed to open wide the doors for the perpetration of wrongs. If more than one affidavit were allowed, it would tend to amplify the opportunity for imposing upon persons claiming liens, particularly so where a num-

ber of persons were asserting liens for material furnished to a contractor for the improvement of the same property. Whether fraudulently or by mistake, the contractor might give sworn statements that some of the claims had been paid, and omit to give sworn statements as to others; thus producing the result that those claims of lien sworn to have been paid for would be lost, and those not mentioned would stand against the property. Such a result would defeat the object of the provisions of another statute, which declares the dignity of liens and the order in which they should be paid. Civil Code, § 3353 (3). This is less apt to occur where only one sworn statement is permitted. Under this construction, if the owner of the premises pays the contractor by installments before completion of the work, he does so at the peril of showing that it was properly applied in discharge of debts for material furnished or work done in the construction of the improvement. He may refuse to pay the contractor until the work is completed and protect himself against liability upon compliance with the statute, or he may pay the contractor from time to time during the progress of the work; but he is not protected by taking separate affidavits that all work done and materials furnished up to that time have been paid for.

3. Another contention was that the statute (Civil Code, § 3352) gives the contractor a lien of equal rank with the lien provided for materialmen, and that the payment to the contractor in discharge of his lien was properly credited upon the contract price, thus reducing to the extent of such payment the amount for which the materialmen could otherwise assert liens. This contention rests upon an improper construction of the statute. The obvious purpose of the statute is to protect materialmen who comply with its terms. If it is held that mere payments to the contractor in discharge of the contract price would defeat the lien of materialmen, the whole statute which undertakes to authorize liens for materialmen would be avoided. There would be no necessity for doing more than pay the contractor. If mere payments to the contractor would suffice, why the provision that the owner may be protected by taking the specified affidavit from the contractor? On the subject of contractor's liens see *Tuck* v. *Moss Mfg. Co.*, 127 *Ga.* 729 (56 S. E. 1001) ; *Savannah &c. R. Co.* v. *Callahan*, 49 *Ga.* 506.

4. Another contention was, that, with four or five exceptions,

the materialmen have waived their right to a lien. This waiver is said to have resulted from a contract between the materialmen and the contractor, stipulating that the materialmen will not allow any mechanic's lien of any kind or character, for materials furnished or work done, to be filed against the improvements therein contracted for, or the ground on which they are to be erected; but will pay for and satisfy as they mature each and every claim incurred by the contractor in and after the furnishing of the material and labor, and will hold him harmless against all such demands and liens as they may be asserted by any persons under or employed by him, or for furnishing materials; and further, that in the event any suits are filed, asserting a claim upon the building or the ground upon which it is to be erected, because of any work done or material furnished in connection with said building, the materialmen will pay off and satisfy such judgments; and that the amounts due them for the material shall not be paid until the contractor shall have received his money from the owner. The argument advanced is, that the tenor and effect of the statute is that the materialmen shall be paid before the contractor shall be entitled to receive his money from the owner, and that the contractor, in order to induce the owner to pay him without liability to the materialmen, contracted with the materialmen that their accounts for material should be paid only from moneys collected by the contractor from the owner; in other words, that such agreement is tantamount to an authorization to the owner to pay the entire contract price (so far as the materialmen are concerned) to the contractor; and that this provision, being in writing, amounted to the waiver contemplated in the statute. There is nothing in the record to show that the owner knew of this contract and acted thereon to his detriment; so that no question of estoppel can arise. The question is whether this stipulation in the contract between the contractor and materialmen amounts to a waiver of the materialman's lien which he has under the statute against the premises. We do not think so, because the waiver contemplated in the statute is a waiver by the materialman to the owner. It does not appear that there was any intention that this agreement should operate as a waiver, or that it was even known to the owner of the premises. It follows that the materialmen have made no waiver of their liens to the owner.

5. The auditor reported, and the trial judge decreed, that the

cost of the construction of the building amounted to $231,848.71; that the total amount paid out by the Realty Trust Company was $216,440.40; that of this latter amount Stevens was paid on non-lienable items the sum of $30,309.31; and that there was due to the contractor the sum of $15,392.89. It was also decreed that the various subcontractors have judgment in the aggregate sum of $36,-163.09. It is contended that the court is without power to enforce against the Realty Trust Company, except as to the amount due the contractor (which was a fund in court), the unforeclosed liens of the alleged subcontractors and materialmen; for the reason that the court had no jurisdiction over the contractor, Stevens, otherwise than that acquired through service by publication. It is contended, that one of the statutory prerequisites to the existence of a materialman's lien is that the proceedings to foreclose should be begun within twelve months, and that no judgment of foreclosure can be had unless a judgment against the contractor has been previously obtained, or the contractor is concurrently sued and served so as to permit a judgment against him in personam; that inasmuch as the contractor was not a resident of the State, and no judgment in personam could be obtained in this proceeding, there could be no foreclosure of the subcontractors' and materialmen's liens. It is true that an essential element in the assertion of the lien of a materialman is his foreclosure of the same within twelve months from the maturity of his claim. *Chamlee Lumber Co.* v. *Crichton,* 136 *Ga.* 391 (71 S. E. 673). It has been held that the lien of the materialman for material furnished upon the employment of a contractor can not be foreclosed by a direct suit against the owner of the premises without previously or concurrently suing the contractor to whom the material was furnished. *Lombard* v. *Trustees, 73 Ga.* 322. It was suggested in *Castleberry* v. *Johnson, 92 Ga.* 499 (17 S. E. 772), that, as the contractor was a non-resident, so that he could not be sued or served in the usual manner, the materialman might foreclose his lien by resorting to an equitable proceeding against the owner and contractor jointly, serving the latter by publication. It is argued that this suggestion is an obiter, and that what the court probably had in mind was that such fund in the hands of the owner could be reached on the principle that such fund would be a res within the power of the court to seize, and the court seizing it could administer it and grant such relief against the non-

resident owner of it so far as the res itself was concerned, but no further, just as if the non-resident were personally served and before the court. We need not enter into any discussion as to the accuracy of the position of counsel in this regard, for the reason that the facts of this case bring it without the range of the premise from which his conclusion is deduced. It was said in *Pike Lumber Co.* v. *Mitchell*, 132 *Ga.* 675, 676 (64 S. E. 998) : "The reason of the rule is that the landowner should not be called on to pay a debt he did not contract, and for which his property is liable only by force of a statute, until the materialman has established by judgment, in a proceeding to which the contractor is a party, that the contractor owes to him the amount for which he is seeking to assert his lien." The present litigation was initiated by the landowner at a time when the materialmen could have come into court and foreclosed their liens. The owner of the premises undertook to bring the contractor before the court, and procured an order enjoining the materialmen from instituting any suit against the owner or its property, looking to the foreclosure of their liens, and that the whole matter should be settled in this litigation. The owner so tied the hands of the materialmen as to prevent any action outside of this litigation. It brought them into this litigation, and it does not lie in its mouth to say that they can not obtain a judgment of foreclosure of their liens because they have not independently obtained a judgment against the contractor. They were enjoined from taking any steps looking to the foreclosure of their liens against the Realty Trust Company or its property. One of the necessary steps in a proceeding to foreclose that lien was to sue the contractor in an independent suit and obtain judgment, or to sue him concurrently with the owner of the premises. We therefore think that by the voluntary action of the realty company (the owner of the premises), requiring these materialmen to establish their liens in this litigation, it can not contend that the contractor has not been personally served. The bond was given to furnish a security against the default of the contractor. It can not be that if the contractor not only defaults but is without the jurisdiction, so as not to be personally served, the security is destroyed. Such construction would render a bond of this character a security in name only in a case like this. None of the decisions referred to by counsel are contrary to what is above stated.

6. It is further contended that at the time this litigation was instituted, and at the time the materialmen intervened for the purpose of foreclosing their liens, the building was incomplete, and the liens were inchoate, and for that reason they could not be foreclosed. The reply to this contention is obvious. The owner of the building made the lien claimants parties to the proceeding filed by it, and enjoined them from prosecuting any foreclosure suit against the property except in that proceeding. The statute requires a materialman to begin his action for the recovery of the amount of his claim within twelve months from the time the same shall become due. Civil Code, § 3353, par. 3. No reference is here made by the statute to the completion of the work by the contractor. Even if this contention would be true under ordinary circumstances, it could not apply in this case; for the whole purpose of the equitable proceeding by the Realty Trust Company was to take charge of the building and to complete it, and to compel the materialmen in that proceeding to assert whatever liens they claimed against the owner of its property. Under the injunctive order in this case, unless the claimants were allowed to set up their liens in this proceeding they would be completely debarred from asserting them.

7. The surety company contends that, under its bond, it is not liable to the realty company for the amount found to be due the materialmen by the judgment of the court. The condition of the bond is: "Now should the said H. L. Stevens faithfully, well, and truly perform his said contract in erecting and completing said building according to all its terms and provisions and the provisions of its plans and specifications, then this bond to be void." By the terms of the contract Stevens was to furnish all the labor and material and to construct the building in conformity with the plans and specifications of an architect, at actual cost plus ten per cent., with a guaranty that the cost of the work should not exceed $160,000, exclusive of his commissions and certain extras referred to in the contract. The stipulation for furnishing material, construction, and extras applied as well to the payment for material which entered into the construction of the building as to the construction of the building in accordance with the plans and specifications of the contract. The contractor was bound to complete the building within a certain limitation, and to pay for materials used in its construction. Whatever was necessary to complete the building,

and the amounts required to free the building from the liens of the materialmen, would be proper elements of damage for which the surety on the building bond would be liable.

8. The plaintiff in error contends that the Realty Trust Company discharged it from liability as a surety, by breaching the obligation and conditions imposed on the Realty Trust Company in the bond. The bond provides that "A substantial compliance with the contract herein referred to on the part of the obligee herein shall be a condition precedent to its right of recovery hereunder." The contract provided that the contractor "shall be paid for the execution of the work covered by this contract, and such other work as hereinafter provided, actual cost, plus ten per cent., to be paid as follows: On the first of each month" the contractor "shall be reimbursed for all expenditures incurred in connection with this work for the month previous, plus five per cent. The remaining five per cent. to be due and payable within ten days after the completion and acceptance of the work." It was further agreed that the contractor "will be allowed actual cost, plus ten per cent., for such extra work, to be paid as hereinbefore provided for other payments under this contract." It appeared from the evidence that in May and June, 1909, the contractor expended certain sums which were not paid by the Realty Trust Company until July 15, 1909. It is claimed that the delay in this payment operated to increase the risk of the surety, and to discharge it from liability. The contract provided for these monthly payments by the Realty Trust Company on the approval of the architect. The architect withheld his approval, on the ground of a controversy between the contractor and himself as to the manner of the execution of the work. This was amicably adjusted, and payments were made in July. We can not see how the withholding of this money until the controversy between the architect and the contractor, as to the proper performance of the contract, was adjusted, would affect the liability of the bond company. The contract provided for monthly payments to the contractor, who, on the first of each month, was to furnish "an itemized statement of the amount and cost of labor employed, and the amount and cost of materials used or delivered to the contractor on the job for use in the building." And the bond provided that the realty company should at the same time furnish the surety company with a true copy of such statements, by mailing the same

to its general agent. The first three of the verified statements representing the work done during the months of February, March, and April, 1909, were filed with the architect, approved by him, and paid by the realty company. Copies of these statements were not mailed to the surety company until August 7, 1909; copies of the affidavits of the contractor having been furnished to the surety company on July 16, 1909. The May and June estimates were mailed to the general agent of the surety company on the same day as the first three certificates were, to wit on August 7, 1909. The receipt of these certificates was duly acknowledged by the surety company, and no objection or protest was made on account of the failure to send them promptly. We do not see how the surety company was prejudiced and its risk increased. It permitted the work to proceed and the realty company to rest under the belief that its procedure was recognized by the surety as in substantial compliance with the bond. There was a similar estimate in regard to the work performed during the months of October and November, and certificates therefor were not forwarded to the surety company until January, 1910. These were received by the surety company without any objection as to the delay. And what has been said as to the others applies equally as well to these.

9. Under the original contract extras were to be paid for monthly. It is contended by the surety company, that, under clause "d" of the supplemental contract, all extras were to be held up until after the completion of the contract, and that the payment for extras after the date of the new contract operated to increase the liability of the surety company. Our construction of clause "d" of the modified contract is that it is applicable only to ·the controversy between the contractor and the owner as to whether the change demanded by the building inspector and the building laws of the City of Atlanta should be treated and paid for as an extra. The stipulation was that the contractor should have the right, on completion of the contract, to make his claim for such extras, and that it did not apply to other extras contemplated in the original contract, but that the original contract with respect to the time should be of full force. Nor do we think that clause "d" had any reference to the time of payment for extras. The sole purpose of clause "d" was to make provision by which the parties could submit to arbitration, at the completion of the building, the question

of whether particular work which might have been performed, or materials which were furnished in the construction of the building, were to be classified as extras or not. The supplemental contract expressly declared that it did not abrogate the original contract, but that the original contract was to remain of full force. The original contract provided that payments for all work and materials furnished, whether to be classified as extras or not, should be paid for at the end of each month upon approval by the architect. As this provision of the original contract was preserved, the payments for extras were to be made just as payments for any other work; and the mere fact that provision was made in clause "d" of the supplemental contract for the submission to arbitration of any disputed question relatively to what constituted extras did not so affect the time of payment for such extras as to discharge the surety.

10. It is further contended by the surety company that the present litigation has the effect of increasing the risk of the surety, but we can not see how the surety's risk has been increased by what has occurred since the filing of the petition in the present case. Other matters relied upon as an increase of risk are so obviously without merit that we will not undertake to state them.

11. Upon consent of counsel and various parties in the case, exclusive of the Massachusetts Bonding and Insurance Company, the court fixed the auditor's fee at $2,500, and "ordered that the taxation of said fee, as cost in this case as between the parties hereto, is hereby reserved for further consideration by the court." On the bill of exceptions complaining of legality of this order this court held that the Massachusetts Bonding and Insurance Company was not bound by it, and direction was given that the order fixing the fee of the auditor be so amended as to declare that it in no way adjudicates or affects any rights of the Massachusetts Bonding and Insurance Company as to the amount of the auditor's fee and the method of its taxation, and that the status of such fee in that respect shall remain as if no order had been passed. In the final decree, to which exception is taken, the court decreed as follows: "The parties hereto, other than the Massachusetts Bonding & Insurance Company, having agreed among themselves that the auditor's fee should be fixed at twenty-five hundred ($2,500.00) dollars, the amount of said auditor's fee as to them is hereby fixed at that sum. As to the defendant Massachusetts Bonding & Insurance Company,

the auditor's fee is hereby fixed in the sum of one thousand ($1,000) dollars, of which the said Massachusetts Bonding & Insurance Company is required to pay the sum of five hundred ($500.00) dollars. The remaining two thousand ($2,000) dollars thus found on account of auditor's fees shall be divided and paid equally by the plaintiff Realty Trust Company and by the defendants hereto, other than the Massachusetts Bonding & Insurance Company." It is contended, that the original order fixing the auditor's fee is valid as to those consenting to it, but that the court was without power to pass other and further order with respect to the same, except to prorate the same among the parties as to whom it was held valid; and further, that the court could not lawfully fix the auditor's fee at the sum of $2,500 as to some of the parties to the case and $1,000 as to the plaintiff in error. Clearly, under the direction given when the case was here before, the court had the authority to amend the order fixing the auditor's fee and provide for its payment by the parties. The court undertook to fix the fee at $1,000, to be allowed as costs without regard to the agreement, and to assess one half of that against the plaintiff company; and incorporated in the judgment the agreement of the other parties to so enlarge that fee that the amount in excess of the fee limited . by the statute, together with one half of the fee authorized by the statute, was assessable against the parties other than the plaintiff in error. We see no error in this. No party complains of the allowance of this fee except the surety company, and that company could not complain if any of the other parties were improperly taxed too much cost. It was an equitable suit, and it was in the discretionary power of the court to have taxed all of the cost, up to the limit prescribed by the statute, against the surety company, or only part thereof. In the exercise of that power the court taxed that company only one half of the amount that the law allows in such cases. No special circumstances are made to appear which would require interference with the discretion of the court.

*Judgment affirmed on both bills of exceptions. All the Justices concur.*