A89A2211. MAYER ELECTRIC SUPPLY COMPANY, INC. v. FEDERAL INSURANCE COMPANY.
(393 SE2d 270)

CARLEY, Chief Judge.

One Buckhead Plaza Associates (Owner) contracted with Trans-Con Construction Company (Contractor) for the construction of an

office building. The Contractor, in turn, subcontracted to have the electrical work done by Electrical Management, Inc. (Subcontractor). The Subcontractor was supplied with material for the project by appellant-plaintiff Mayer Electric Supply Company (Materialman). Before construction of the building was completed, the Materialman filed its claim of lien for such unpaid materials as it had supplied to the Subcontractor. A bond was secured from appellee-defendant Federal Insurance Company (Surety) to discharge the Materialman's lien. Thereafter, the Owner continued to make payments to the Contractor and the Contractor continued to make payments to the Subcontractor. However, the Subcontractor eventually filed for bankruptcy and abandoned the job. The building was subsequently completed and the Contractor received the full contract price from the Owner.

The Materialman filed this suit against the Surety, seeking to recover on the bond. Subsequently, the Surety moved for summary judgment on the ground that the Owner's payment of the full contract price to the Contractor was a complete defense. The trial court granted summary judgment in favor of the Surety, and the Materialman appeals.

The "contract price of the improvements made or services performed" establishes the maximum extent to which an owner's property may be subject to materialmen's liens. OCGA § 44-14-361.1 (e). However, an owner's mere payment of the full contract price to the contractor, standing alone, is not and has never been a complete defense to foreclosure of a materialman's lien. "The obvious purpose of the statute is to protect materialmen who comply with its terms. If it is held that mere payments to the contractor in discharge of the contract price would defeat the lien of materialmen, the whole statute which undertakes to authorize liens for materialmen would be avoided." *Massachusetts Bonding & Ins. Co. v. Realty Trust Co.*, 142 Ga. 499, 504 (3) (83 SE 210) (1914).

"[T]he owner of the real estate improved, who has paid the agreed price or any part of same, may set up the payment in any action brought and prove by competent and relevant evidence that the *payments were applied as provided by law*, and no judgment shall be rendered against the property improved." (Emphasis supplied.) OCGA § 44-14-361.1 (a) (4). Thus, an owner must not only show that full payment was actually made to the contractor, he is also "required to show that the sums paid to the contractor were properly appropriated to materialmen and laborers or that the contractor's statutory affidavit concerning such indebtedness had been obtained. [Cits.]" *Jones Mercantile Co. v. Lyn-Har, Inc.*, 245 Ga. 812, 813 (267 SE2d 251) (1980). Therefore, it is entirely possible that an owner who has paid the full contract price to the contractor may nevertheless still have his property subjected to enforceable materialmen's liens to

the maximum extent of the full contract price. "[A]lthough the owner had paid the contractor the entire contract price, this would provide no defense to the action unless the owner further showed that the affidavit of the contractor had been obtained, or that the money had in fact been used for payment of labor and materials. [Cit.]" *Roberts v. Ga. Southern Supply Co.*, 92 Ga. App. 303, 306 (1) (88 SE2d 554) (1955). Since the Owner in the instant case was unable to secure the Contractor's statutory affidavit, the only issue for resolution is whether the Surety met its burden of showing that the sums that were paid by the Owner to the Contractor as full payment of the contract price were otherwise "properly appropriated" so as to defeat the Materialman's lien.

In determining whether payments have been "properly appropriated," the law provides that if *no* materialmen "have filed and recorded liens, but all have claims of lien, the payment by the contractor, out of money furnished him by the owner, of any such claims will be sufficient to discharge the liability of the owner to any other materialmen or laborers to the extent of the amount paid. If any materialman or laborer has filed his lien, then payment to others in preference to him would be at the peril of the owner; and if any such lien were finally reduced to judgment, it could be enforced against the owner['s property]. This construction of the act requires that materialmen and laborers must be paid to the extent of the contract price; that whenever a materialman or laborer presents a claim within the time he would be compelled to file and record his lien, the discharge of his claim by the contractor will protect the owner to this extent against unsatisfied claims of other materialmen and laborers; but that where claims of liens have been duly recorded, payments made to other materialmen and laborers with the money of the owner will be no reply to the claims of such materialmen or laborers so recording their liens." *Green v. Farrar Lumber Co.*, 119 Ga. 30, 34 (46 SE 62) (1903). Thus, so long as no materialmen's liens have previously been filed, payment that is made to any materialman as a potential lien claimant is payment which is "properly appropriated" and may be set up by the owner in defense of any subsequently filed materialman's lien. See *Jones Brick Co. v. Seagler Bros.*, 146 Ga. 19 (1) (90 SE 473) (1916). If, however, materialmen's liens have previously been filed, payment that is thereafter made to any other materialman as a potential lien claimant is not payment which is "properly appropriated" and may not be set up by the owner in defense of the subsequent foreclosure of those previously filed liens. " 'If a claim of lien has been filed and recorded, then the owner must see that such materialman or laborer is satisfied out of the money paid by him to the contractor, or he will be held liable for the amount in the event, upon suit brought, it should be determined that the claim was valid.' " (Emphasis omitted.) *Whatley*

*v. Alto Corp.*, 211 Ga. 718, 723 (1) (88 SE2d 398) (1955).

The analysis is somewhat different when the contractor has abandoned his contract with the owner. In cases of abandonment, the original contract price no longer establishes the maximum extent to which an owner's property may be subject to materialmen's liens. "If the contractor abandons his contract, the owner may have it completed and charge the necessary cost of completion against the contract price, before being liable either to the contractor or to the materialman. . . . [I]f [the owner] does complete the work, the necessary cost of doing so may be deducted from the contract price, and the property will only be subject to the lien of the materialman to the extent of the balance." *Prince v. Neal-Millard Co.*, 124 Ga. 884, 893 (2, 3) (53 SE 761) (1906). Thus, it is the amount of the original contract price *less* the expenses incurred in completion of the abandoned project that represents the extent to which the owner's property may be subject to materialmen's liens. Accordingly, if the total expense incurred by the owner in completing the abandoned project is itself in excess of the original contract price, then the original materialmen no longer have any lien rights to enforce. *Rowell v. Harris*, 121 Ga. 239 (48 SE 948) (1904). If, on the other hand, the total expense incurred by the owner in completing the abandoned project is less than the original contract price, the property is, to that extent, subject to foreclosure of the original materialmen's liens unless the owner can show that "such balance has been lawfully paid out upon the making of an affidavit as provided by the statute, or has been advanced to the [original] contractor and applied as indicated in the case of *Green v. Farrar Lumber Co.*, supra. . . ." *Prince v. Neal-Millard Co.*, supra at 894 (2, 3).

Applying these principles to the facts of the instant case demonstrates the following: The Contractor did not abandon the contract. Accordingly, the Owner's property is otherwise subject to materialmen's liens to the full extent of the original contract price. Compare *Rowell v. Harris*, supra. Contrary to the Surety's assertions, the consequences resulting from the abandonment of the project by the Subcontractor were the responsibility of the Contractor and that abandonment has no bearing on the Materialman's right to foreclose its lien for such materials as were furnished to the Subcontractor and actually used in the project. " '[W]here the original contractor completes the work in accordance with the contract, the property owner will be responsible to mechanics, materialmen, and subcontractors who have fulfilled their contracts, and who have observed the requirements . . . of the statutes for the amount of their claims that do not aggregate more than the contract price, although the owner may have paid the original contractor the full contract price. . . .' " *McCrary v. Barberi*, 100 Ga. App. 167, 170 (110 SE2d 426) (1959). The Material-

man filed its claim of lien before the Owner paid the full contract price to the Contractor. Accordingly, the Surety did not meet its burden of showing that the sums paid by the Owner to the Contractor as full payment of the contract price were "properly appropriated" so as to defeat the Materialman's lien. As previously noted: "[W]here claims of liens have been duly recorded, payments made to other materialmen and laborers with the money of the owner will be no reply to the claim of such materialmen or laborers so recording their liens." *Green v. Farrar Lumber Co.*, supra at 34. It follows that the trial court erred in granting summary judgment in favor of the Surety.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED MARCH 13, 1990 —
REHEARING DENIED MARCH 28, 1990 — 

*Macey, Wilensky, Cohen & Wittner, Harvey D. Harkness*, for appellant.

*Alston & Bird, John I. Spangler III*, for appellee.

*Robert B. Baker, Jr., G. Stephen Parker, William O. Miller*, amici curiae.