A91A1185. D & N ELECTRIC, INC. v. UNDERGROUND FESTIVAL, INC.
(414 SE2d 891)

CARLEY, Presiding Judge.

The relevant facts in this lien foreclosure action are as follows: Appellee-defendant leased property for a 50-year term and, thereafter, sub-let a portion of the property to B Gallerie Group, Inc. (BGGI), a Delaware corporation. This sub-lease provided that, prior to the commencement of the term, BGGI was to have certain improvements made on the property. The sub-lease also provided that BGGI was to obtain appellee's "written approval of the plans and specifications for such work" and that, "[i]n consideration of [BGGI] making said improvements, [appellee] agree[d] to give [BGGI] an allowance toward the cost of [BGGI's] work. . . ." Payment of this allowance was to be made to BGGI "within sixty (60) calendar days after . . . [t]he execution by [BGGI] and each of its contractors, subcontractors, suppliers and materialmen and the delivery to [appellee] of a valid and enforceable waiver of lien in form and substance satisfactory to [appellee]. . . , including such waiving party's sworn affidavit that all contractors, subcontractors, suppliers or materialmen of such waiving party have been paid in full." Appellant-plaintiff performed certain work in connection with the improvements on the property. When it was not paid for its work, appellant filed its claim

of lien and subsequently initiated the instant lien foreclosure action. Appellee answered and, after discovery, moved for summary judgment. The trial court granted summary judgment in favor of appellee and appellant appeals.

1. Neither the existence nor the status of the owner of the reversionary interest in the property is relevant to the resolution of the instant appeal. Since appellee is both the lessee of the property under a 50-year lease and the sub-lessor of BGGI as to the improved portion of the property, appellee is the "true owner" against whose interest in the property a viable lien can attach. *Bennett Iron Works v. Underground Atlanta*, 130 Ga. App. 653 (1) (204 SE2d 331) (1974). Compare *Aetna Indem. Co. v. Town of Comer*, 136 Ga. 24, 25 (2) (70 SE 676) (1911); *Neal-Millard Co. v. Trustees of Chatham Academy*, 121 Ga. 208 (48 SE 978) (1904). " 'Want of title in the defendant to the premises on which the lien is claimed, and alleged title in a third person who is no party to the suit, will not bar an action for foreclosing and enforcing the statutory lien of a materialman.' If the defendant 'has any interest in the premises upon which the lien can take effect, that interest is bound.' [Cits.] . . . [T]he liens [authorized by OCGA § 44-14-361] may attach to the interest of a lessee[-sublessor] who has an estate for years in the demised premises, subject to the conditions of the lease. [Cits.]" *James G. Wilson Mfg. Co. v. Chamberlin-Johnson-DuBose Co.*, 140 Ga. 593 (1, 3) (79 SE 465) (1913).

2. " 'A tenant can not order work done upon the demised premises and charge the owner with the cost, unless there is some relation existing between him and his landlord other than that of lessor and lessee, by virtue of which the landlord expressly or impliedly consents to the contract under which the improvements are made. The mere knowledge of the landlord that the improvements are being made by the tenant is insufficient to charge him or his premises with their cost. He must expressly or impliedly authorize the tenant to make the improvements for the former's benefit. [Cit.]' " *Stevens Supply Co. v. Stamm*, 41 Ga. App. 239, 240 (152 SE 602) (1930).

When the evidence of record in the instant case is construed most strongly against appellee, it shows more than appellee's mere knowledge that BGGI, acting unilaterally, contemplated making improvements on the property. The lease that appellee and BGGI negotiated and executed clearly specified that the improvements were to be made by BGGI and that appellee was to pay at least a portion of the cost of making those improvements through an allowance to BGGI. Under such circumstances, a finding would be authorized that appellee had, in effect, consented to such of BGGI's contracts as related to the contemplated improvements on the property. "Here there was a specific contract for the improvements made prior to the commencement date of the lease with a rental allowance in stated

amounts." *Columbus Square &c. Co. v. B & H Steel Co.*, 150 Ga. App. 774, 777 (258 SE2d 600) (1979). "In the cases cited by [appellee], [cits.], the lessors did [no] more than merely consent to improvements being made; they [never] contracted for them and [never] paid the lessees by means of lease credits. [Here, unlike in those cases,] [t]here is . . . evidence in the record . . . to suggest such an arrangement [between appellee and BGGI]." *Nunley Contracting Co. v. Four Taylors*, 192 Ga. App. 253, 254 (384 SE2d 216) (1989). See also *Bennett Iron Works v. Underground Atlanta*, supra. Compare *Accurate Constr. Co. v. Dobbs Houses*, 154 Ga. App. 605 (269 SE2d 494) (1980). "It is common practice in the real estate business for a landlord to give a tenant an allowance to finish or redesign leased space. . . . *An owner may be liable to a contractor of the owner's lessee [up to] the amount [of the allowance] that the owner contracted with the lessee to be liable.* [Cits.]" (Emphasis supplied.) *F. S. Assoc., Ltd. v. McMichael's Constr. Co.*, 197 Ga. App. 705, 707 (1) (399 SE2d 479) (1990).

Appellee obviously recognized and anticipated that, by contracting with BGGI for the improvements, it was thereby legally subjecting its own interest in the property to potential liens up to the amount of the allowance that it had agreed to provide to BGGI. Appellee made its payment of the allowance contingent upon the receipt of lien waivers or affidavits from BGGI and from those with whom BGGI had contracted. Thus, if the lien waivers or affidavits *were* provided to appellee, it could pay the allowance to BGGI with assurance that the property would not be subjected to any viable liens. If the lien waivers or affidavits were *not* provided to appellee, it could withhold the allowance from BGGI and use the amount of that allowance to satisfy any viable liens that might be filed.

Since the evidence of record would authorize a finding that appellee had consented to such of BGGI's contracts as related to the contemplated improvements on the property, the lack of any immediate contract between appellee and those with whom BGGI had contracted in connection with those improvements would not be a viable basis for the grant of summary judgment in favor of appellee.

3. As noted, the amount of the allowance that appellee agreed to pay to BGGI is the legal equivalent of the "contract price" and, as such, establishes the maximum extent to which appellee's interest in the property may be subject to liens. *F. S. Assoc., Ltd. v. McMichael's Constr. Co.*, supra at 705 (1). In support of its motion for summary judgment, appellee submitted evidence that the allowance that it had contracted to pay to BGGI had "been paid in full." Appellee urges that this evidence mandated the grant of its motion for summary judgment.

"[A]n owner's mere payment of the full contract price to the contractor, standing alone, is not and has never been a complete defense

to foreclosure of a materialman's lien. . . . '(T)he owner of the real estate improved, who has paid the agreed price or any part of same, may set up the payment in any action brought and prove by competent and relevant evidence that the *payments were applied as provided by law*, and no judgment shall be rendered against the property improved.' [Cit.] Thus, an owner must not only show that full payment was actually made to the contractor, he is also 'required to show that the sums paid to the contractor were properly appropriated to materialmen and laborers or that the contractor's statutory affidavit concerning such indebtedness had been obtained. (Cits.)' [Cit.]" (Emphasis in original.) *Mayer Elec. Supply Co. v. Federal Ins. Co.*, 195 Ga. App. 191, 192 (393 SE2d 270) (1990).

Accordingly, if appellee paid the allowance to BGGI *after* securing the lien waivers or affidavits, as it had contracted to do, it would have a defense to the instant action, but that defense would be based upon the lien waivers or affidavits and *not* the mere payment of the allowance. There is no evidence that appellee did, in fact, secure the lien waivers or affidavits prior to paying the allowance. If, on the other hand, appellee waived the contractual contingency and paid the allowance *without* securing the lien waivers or affidavits, it would have a defense to the instant action *only* if it could further show that the allowance had otherwise been "properly appropriated" as payment for the labor and materials employed in making the improvements. There is no evidence that the allowance that was paid by appellee was, in fact, "properly appropriated." It follows that the evidence showing merely that the allowance had "been paid in full" is not a viable basis for the grant of summary judgment in favor of appellee.

4. Although, for the reasons discussed in Division 2, the lack of any immediate contract between appellee and appellant would *not* be a viable basis for the grant of summary judgment in favor of appellee, the lack of any contractual privity between appellant and BGGI *would* be. The evidence would authorize a finding that appellee had only consented to such of *BGGI's* contracts as related to the contemplated improvements on the property. Accordingly, unless there was contractual privity between appellant and BGGI, appellant can have no enforceable lien against appellee's interest in the property. "In the absence of a showing of a contractual relationship between the owner and the person to whom the materials were furnished, no enforceable lien is created against the owner's property. [Cits.]" *Liggett v. Harper*, 151 Ga. App. 616, 617 (1) (260 SE2d 735) (1979). "An owner may be liable to *a contractor of the owner's lessee* [up to] the amount [of the allowance] that the owner contracted with the lessee to be liable. [Cits.]" (Emphasis supplied.) *F. S. Assoc., Ltd. v. McMichael's Constr. Co.*, supra at 707 (1). " 'There need be no contract between

the materialman and the true owner, but there must be a contract for material with a person who has contracted with the true owner for the erection of the improvements. A contract is necessary to fix the liability of the owner and establish a privity between him and the materialman. A stranger may not order work done upon real estate and thus charge the true owner. . . .' [Cits.]" *Marshall v. Peacock*, 205 Ga. 891, 893 (55 SE2d 354) (1949).

Appellant does *not* base its claim upon a contract with BGGI. Instead, appellant asserts that its contract was with an individual named Phillip Brock "d/b/a B Gallerie." There is no evidence as to Brock's connection with BGGI. However, even assuming that Brock was a corporate officer with authority to bind BGGI contractually, the record nevertheless demonstrates that, in purported compliance with OCGA § 44-14-361.1 (a) (3), appellant did not file suit against *BGGI*, but against Brock *individually*. OCGA § 44-14-361.1 (a) (3) provides that, in order for a lien to be effective, the lien claimant must commence an action for the recovery of the amount of his claim within 12 months from the time that it became due. "In a lien foreclosure the materialman must distinguish between an individual and his corporation and bring suit against the correct account debtor. [Cit.]" *Ben Hill &c. Concrete Co. v. Prather*, 160 Ga. App. 149, 150 (1) (286 SE2d 481) (1981). Brock, in his individual capacity, would be a "stranger" to appellee's contract with BGGI and without authority to " 'order work done upon [the] real estate and thus charge [appellee, as] the true owner. . . .' [Cits.]" *Marshall v. Peacock*, supra at 893. If Brock, in his corporate capacity, was otherwise authorized to contract on behalf of BGGI for the improvements on the property so as to charge appellee with the cost thereof, appellant's failure to bring suit against BGGI in compliance with OCGA § 44-14-361.1 (a) (3) nevertheless mandates the grant of summary judgment in favor of appellee. "Although the result here may seem harsh, the lien laws, being in derogation of the common law, are strictly construed against the lien claimant and in favor of the landowner. [Cit.]" *Ben Hill &c. Concrete Co. v. Prather*, supra at 150 (1).

5. Appellant's remaining enumeration of error is moot.

*Judgment affirmed. Judge Arnold Shulman concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

In Division 1 we rely on certain language in the case of *James G. Wilson Mfg. Co. v. Chamberlin-Johnson-DuBose Co.*, 140 Ga. 593 (79 SE 465) (1913). The language as used in that case refers to the lessee, who was the lienor's "employer." The lienor was entitled to a lien against that "employer's" leasehold estate for years. Here the claim is against the lessee's lessor, who has an estate for years, rather than

against the lessee, who also had an estate for years.

I point out that the holding in *James G. Wilson Mfg. Co.*, that the materialman's lien could attach to and be enforced against the *lessee's* estate for years, is being extended to the *lessor's* estate for years also, based on *Bennett Iron Works v. Underground Atlanta*, 130 Ga. App. 653 (1) (204 SE2d 331) (1974). In *Bennett*, it is not clear that the lessee had an estate for years, however, but that apparently does not affect the lienor's entitlement to a lien against the lessor's estate for years.

DECIDED DECEMBER 20, 1991 —
RECONSIDERATION DENIED JANUARY 7, 1992.

*McReynolds & Welch, J. Michael Welch, Frederic S. Beloin*, for appellant.

*Alston & Bird, John I. Spangler III, Linda K. Disantis*, for appellee.