## A94A0090. UNDERGROUND FESTIVAL, INC. v. McAFEE ENGINEERING COMPANY.
### (447 SE2d 683)

SMITH, Judge.

Underground Festival, Inc. ("UFI") appeals from a judgment entered on a jury verdict in favor of McAfee Engineering Company in a lien foreclosure action brought by McAfee.

The evidence at trial showed that UFI leased certain space in Underground Atlanta to DBA of Atlanta, Inc., to be used to operate a restaurant and bar known as Bourbon Street Beat. DBA's officers were William D. Koehler, president, and Richard Fraser, corporate secretary. The lease was signed by Koehler in his capacity as president. At the time the lease was signed, the outer shell of Underground was being completed by Underground Festival Development Corporation. The interior space was to be designed and built by DBA under the terms of its lease with UFI, which provided for a "construction allowance" for DBA's expenses in improving the leasehold premises as well as certain initial operating expenses. DBA's construction allowance was $800,000.

Koehler oversaw DBA's design, construction, and startup of the leased space. He contracted with McAfee Engineering Company, a California corporation, to design and install an HVAC system and grease hoods in the leased space. In drafting the contract, McAfee relied on blueprints of the space prepared by DBA's architect. Because the architect labeled the blueprints "F & K of Atlanta, Inc.," McAfee erroneously typed that corporate name into the contract Koehler was to sign. Koehler did not notice the error and signed the contract as president of F & K of Atlanta, Inc., which is a nonexistent entity.

McAfee designed and installed the equipment. When it was not paid, it filed a claim of lien against UFI. DBA subsequently filed for bankruptcy protection, naming McAfee as a creditor. McAfee commenced this action to foreclose its lien, and the case proceeded to trial. The jury returned a verdict in favor of McAfee in the amount of its claim, $126,100.

In seven enumerations, UFI contends the trial court erred in denying its motion for a directed verdict and in entering judgment on the jury's verdict.

1. UFI contends McAfee was not entitled to file a lien against its property because no contract existed between it and UFI or its tenant, DBA. We do not agree.

OCGA § 44-14-361 (b) provides that a lien such as McAfee claimed "may attach to the real estate for which the labor, services, or materials were furnished if they are furnished at instance of the owner, contractor, or some person acting for the owner or contractor." This court has interpreted that Code section to require that a contractual relationship exist between a materialman and one contracting with the owner to prevent a stranger from ordering work done upon real estate and charging the owner. See, e.g., *D & N Elec. v. Underground Festival*, 202 Ga. App. 435, 438-439 (4) (414 SE2d 891) (1992). It is true that the contract Koehler signed with McAfee shows him to be the president of a corporation named "F & K of Atlanta, Inc." and does not show him to be the president of DBA, which had the necessary contractual relationship with UFI. This does not mean, however, that no contractual relationship between McAfee and DBA existed.

The evidence presented at trial showed that DBA ratified Koehler's contract with McAfee. "A ratification by the principal shall relate back to the act ratified and shall take effect as if originally authorized. A ratification may be express or implied from the acts or silence of the principal." OCGA § 10-6-52. Koehler testified at trial that DBA ratified the contract. In addition, circumstantial evidence was presented regarding the corporation's conduct which implied ratification. DBA submitted McAfee's invoices to UFI for payment from its construction allowance; Koehler and Fraser wrote a letter to UFI acknowledging that DBA owed $126,100 to McAfee; and DBA listed McAfee as a creditor in that amount in its bankruptcy filing.

Contrary to UFI's contention and that of the dissent, DBA had complete authority to ratify this contract. UFI and the dissent misconstrue and misapply the rule derived from *Broyles v. Kirkwood Ct. Apts.*, 97 Ga. App. 384 (103 SE2d 97) (1958), which cites *Greene v. Golucke*, 202 Ga. 494 (2) (43 SE2d 497) (1947). The rule is that "[a]n act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it. [Cit.]" *Lemmons v. City of Decatur*, 215 Ga. 647, 648 (112 SE2d 597) (1960). Despite the fact that the contract executed by Koehler mistakenly mentioned a different, nonexistent corporation, the evidence shows unmistakably that Koehler intended to act in behalf of DBA.

Moreover, it is undisputed that DBA used the equipment installed. " 'Where a corporation knowing all of the facts accepts and uses the proceeds of an unauthorized contract executed in its behalf without authority, the corporation may be bound because of ratification. (Cits.)' [Cits.]" *Holliday Constr. Co. v. Sandy Springs Assoc.*, 198 Ga. App. 20, 21 (2) (400 SE2d 380) (1990). If this is true where the contract is *un*authorized and the corporation seeks to avoid responsibility, it is certainly so when the contract was in fact authorized, the corporation does not deny that it ratified the contract, but

another name was mistakenly placed on the contract by the material-man.

The principle applicable here is analogous to that governing misnomer situations, where "the important thing is to determine what corporation the parties intended, for it is the intent of the parties that controls. Error in the use of the corporate name will not be permitted to frustrate the intent which the name was meant to convey, and to find out the identity of the corporation intended, resort may be had to evidence aliunde." (Citations and punctuation omitted.) *Pinson v. Hartsfield Intl. Commerce Center, Ltd.*, 191 Ga. App. 459, 461 (382 SE2d 136) (1989).

Because Koehler intended to contract in behalf of DBA and DBA could and did ratify the contract with McAfee, that contract provides the necessary basis for enforcing McAfee's lien. The trial court did not err in denying UFI's motion for directed verdict or in entering judgment on the jury's verdict on this ground.

2. UFI's contention that McAfee failed to fulfill a condition precedent to foreclosure of its lien against UFI because it did not commence an action against DBA prior to its lien foreclosure action is without merit.

The procedure for creating and enforcing liens is set forth in OCGA § 44-14-361.1. Subsection (a) (3) provides that in order to enforce a lien against an owner, a subcontractor must first commence an action against the defaulting contractor to recover the amount of its claim within 12 months. However, subsection (a) (4) relieves the foreclosing subcontractor from this requirement where, as here, the contractor is bankrupt. OCGA § 44-14-361.1 (a) (4) provides that in such case the subcontractor "may enforce the lien directly against the property so improved in an action against the owner thereof, if filed within 12 months from the time the lien becomes due. . . ."

*Melton v. Pacific Southern Mtg. Trust*, 241 Ga. 589 (247 SE2d 76) (1978), relied on by UFI, does not require a contrary result. The *Melton* court *emphasized* the relief provided under the statute when the contractor declares bankruptcy. No action need be filed against the contractor at any time. *Melton* holds only that the subcontractor is not *required* to refrain from commencing an action against a bankrupt contractor; it may file a claim in the bankruptcy action within the appropriate time period. If it does so, it has "commenced an action" within the meaning of OCGA § 44-14-361.1 (a) (3). *Melton*, supra at 591-592.

Here, McAfee both filed a claim in DBA's bankruptcy action and brought its action against the owner within 12 months. The trial court properly denied UFI's motion for a directed verdict and entered judgment on the jury's verdict on this ground.

3. Contrary to UFI's assertion that the funds in the construction

allowance were exhausted by proper disbursements, this issue was contested at trial. UFI had the burden of proving proper payments. *D & N Elec.*, supra, 202 Ga. App. at 437-438 (3). There was evidence on both sides of the issue. Although UFI presented some evidence of payments and the circumstances surrounding them, McAfee also presented evidence showing that funds from the allowance were retained by UFI and applied to items originally permitted under the standard lease language but specifically deleted in a rider to the lease. These items included approximately $24,000 for pre-opening expenses and grand opening expenses, $10,830 for UFI's work hooking up a sprinkler system, and approximately $80,000 in unpaid rent.

Because the evidence conflicted, the trial court properly denied UFI's motion for a directed verdict on this issue. The jury was not required to accept UFI's evidence. There was some evidence to support the jury's verdict, and on this ground we must affirm the judgment entered on that verdict. See *Mashburn v. Wright*, 204 Ga. App. 718, 719 (420 SE2d 379) (1992).

4. UFI contends the trial court erred in denying its motion for directed verdict because McAfee failed to prove it complied with the Nonresident Contractors Act, OCGA § 48-13-30 et seq.

The Act requires nonresident contractors doing business in this state to register with the Commissioner of Revenue whenever the total price of a contract is greater than $10,000, OCGA § 48-13-31, and to obtain a bond ensuring payment of state and local taxes before commencing performance of a construction contract. OCGA § 48-13-32 (a), (b). Our courts have held that a nonresident contractor may substantially comply with the Act by registering after the completion of a project. *Clover Cable &c. v. Heywood*, 260 Ga. 341, 343-344 (3) (392 SE2d 855) (1990). McAfee showed late registration with the Commissioner of Revenue. UFI argues that because McAfee did not present proof that it paid all taxes, substantial compliance was not shown. We do not agree.

Noncompliance with the Act is an affirmative defense asserted by UFI. Although it need not be pled because it is not specifically enumerated in OCGA § 9-11-9, UFI has the burden of proving the elements of the defenses it asserts. *Carver v. Jones*, 166 Ga. App. 197, 198 (1) (303 SE2d 529) (1983). It failed to present evidence that McAfee had not paid all taxes due. Therefore, the trial court properly denied UFI's motion for a directed verdict on this issue.

5. We have considered UFI's remaining enumerations of error, and find them to be without merit. The trial court properly denied UFI's motion for a directed verdict and entered judgment on the jury's verdict.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson, Blackburn, JJ., and Senior Appellate Judge Har-*

*old R. Banke concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

Plaintiff McAfee Engineering Company is not entitled to file a lien against the property of defendant Underground Festival, Inc. since it had no contract with defendant or its tenant, DBA of Atlanta, Inc. " ' "There need be no contract between the materialman and the true owner, but there must be a contract for material with a person who has contracted with the true owner for the erection of the improvements. A contract is necessary to fix the liability of the owner and establish a privity between him and the materialman. A stranger may not order work done upon real estate and thus charge the true owner. . . ." (Cits.)' *Marshall v. Peacock*, 205 Ga. 891, 893 (55 SE2d 354) (1949)." *D & N Elec. v. Underground Festival*, 202 Ga. App. 435, 438-439 (4) (414 SE2d 891).

Prior to the execution of the lease between defendant and DBA of Atlanta, Inc., Koehler, who was president of DBA of Atlanta, Inc., signed a written subcontract agreement with plaintiff. Under this contract, plaintiff agreed to design and install the heating, ventilation, and air conditioning system for a location in Underground Atlanta. However, Koehler purported to sign the subcontract agreement as an agent of "F & K of Atlanta, Inc.," a non-existent entity. While the majority alters the contract by concluding that parol evidence has probative value to show that Koehler executed the contract while acting as an agent of DBA of Atlanta, Inc., I do not agree that this disregard of the parol evidence rule is appropriate and must respectfully dissent. "Parol evidence cannot . . . be admitted 'to add to, take from, or vary the writing itself.' *Andrews v. Skinner*, 158 Ga. App. 229, 230 (279 SE2d 523) (1981)." *Buice Grading &c. v. Bales*, 187 Ga. App. 263, 265 (370 SE2d 26). See also OCGA § 24-6-1. Even parol evidence admitted without objection is ineffective to vary the terms of a written contract. *Cleghorn v. Shields*, 165 Ga. 362 (2) (141 SE 55).

The majority's reliance upon *Pinson v. Hartsfield Intl. Commerce Center, Ltd.*, 191 Ga. App. 459, 461 (382 SE2d 136) is misplaced since the case sub judice does not involve a *misnomer* of a corporation such as authorizes consideration of evidence outside the writing to identify the intended *party* at the *time* of the execution of the contract. In the case sub judice, plaintiff placed the fictitious entity name supplied by Koehler on the contract and apparently intended to contract with that entity. At the time the contract was signed, Koehler knew that this was a fictitious name assigned to a proposed Underground Atlanta project and knew that the fictitious name was not one and the same as DBA of Atlanta, Inc. At the time the contract was signed, Koehler failed to disclose any intent to act on behalf of DBA of Atlanta, Inc. and such hidden intent was dis-

closed only via parol evidence at trial. Whether, at the time the contract was signed, plaintiff even knew DBA of Atlanta, Inc. existed is not shown. In my view, the majority uses the parol evidence of Koehler's secret intentions for an improper purpose, to contradict rather than explain the written contract. *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432, 434 (1) 435 (301 SE2d 493). See also *United States Fidelity &c. Co. v. Coastal Svc.*, 103 Ga. App. 133, 136 (4) 137 (118 SE2d 710)

Based on the preceding view of the evidence in the case sub judice, I would hold that the contract in question could not be ratified by DBA of Atlanta, Inc. since "a contract which does not on its face purport to be made on behalf of a corporation is not subject to ratification for the reason that a principal cannot ratify a contract which is not in the first instance made on its behalf." *Broyles v. Kirkwood Ct. Apts.*, 97 Ga. App. 384, 386 (103 SE2d 97). Plaintiff argues that the Broyles decision is factually distinguishable. Nonetheless, the legal principle which defendant would draw from *Broyles* is sound. Stated in other words: " 'The doctrine of ratification is not applicable against a person as to an act of one who did not assume to act in his name or under authority from him.' [Cits.]" *Greene v. Golucke*, 202 Ga. 494 (2) (43 SE2d 497). See also *Lemmons v. City of Decatur*, 215 Ga. 647 (112 SE2d 597) and 3 AmJur2d, Agency, § 188. In my view, DBA of Atlanta, Inc. could not ratify the contract since in entering the agreement, Koehler did not purport to act for it. *D & N Elec. v. Underground Festival*, 202 Ga. App. 435, 438-439 (4), supra; *F. S. Assoc., Ltd. v. McMichael's Constr. Co.*, 197 Ga. App. 705, 706 (399 SE2d 479).

DECIDED JULY 15, 1994 —
RECONSIDERATION DENIED JULY 29, 1994 — 

*Alston & Bird, John I. Spangler III, Robert L. Crewdson*, for appellant.

*Shapiro, Fussell, Wedge & Smotherman, David L. Tank, Ronald J. Garber*, for appellee.